NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HEARTLAND PAYMENT SYSTEMS, LLC, | |
| Plaintiff, | Civil Action No. 3:18-cv-9764-BRM-DEA |
| v. | OPINION |
| ROBERT O. CARR and KATHIE HANRATTY, | |
| Defendants. | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Kathie Hanratty's ("Hanratty") Motion to Dismiss for lack of jurisdiction and failure to state a claim. (ECF No. 28.) Heartland Payment Systems, LLC ("Heartland") opposes the Motion. (ECF No. 36.) Having reviewed the parties' submissions filed in connection with the Motion and declined to hold Oral Argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Hanratty's Motion to Dismiss is **DENIED**.

# I. BACKGROUND

### A. Factual Background

For the purposes of the motion to dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Heartland. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). This action allegedly arises out of Robert O. Carr's ("Carr"),

the former CEO and Chairman of the Board of Heartland, breach of his fiduciary duties to Heartland by tipping his girlfriend, Hanratty, about Global Payments Inc.'s ("Global") non-public offer to acquire Heartland and Hanratty's purchase and subsequent sale of Heartland stock.

### 1. The Parties

Heartland is currently a Delaware limited liability company with its principal place of business in Atlanta, Georgia. (ECF No. ¶ 62.) Heartland is a successor to Heartland Payment Systems, Inc., which Carr founded. (*Id.* ¶ 62 n.4.) Heartland Payment Systems, Inc. was merged into Plaintiff Heartland Payment Systems, LLC in April 2016 as part of the merger with Global, and Heartland obtained all of Heartland Payment Systems Inc.'s rights and claims. (*Id.* ¶ 66.) Therefore, Heartland Payment Systems, Inc. no longer exists as a separate entity. (Id. ¶ 62 n.4.)[1] However, during the relevant time period when Carr breached his duties to Heartland, Heartland conducted business in New Jersey and had its principal place of business in New Jersey. (*Id.* ¶ 69.)

Carr is a citizen of New Jersey. (*Id.* ¶ 67.) He founded Heartland and served as its Chairman and CEO from October 2000 until its acquisition by Global in April 2016. (*Id.* ¶ 90.) In the fall of 2015, Carr, as Heartland's CEO and Chairman, negotiated the acquisition of Heartland. (*Id.* ¶ 4.) Carr had a fiduciary and contractual duty to maintain Global's interest in and offer to acquire Heartland confidential until it became public. (*Id.* ¶ 6.) Hanratty is a citizen of Connecticut, who allegedly conspired with Carr and aided and abetted Carr's breaches of his fiduciary duty with Heartland during the Global acquisition. (*Id.* ¶ 74.)

---

[1] Throughout this Opinion, Heartland refers to Heartland Payment Systems Inc. before the merger and Heartland Payment Systems, LLC after the Global merger.

### 2. Aiding and Abetting

In the fall of 2015, Global and Heartland began negotiating the acquisition of Heartland through Carr. (*Id.* ¶ 4.) Prior to December 10, 2015, the acquisition remained non-public and confidential information. (*Id.* ¶ 5.) On December 10, 2015, rumors began to circulate in the media regarding the potential acquisition, and on December 15, 2015, Global and Heartland publicly announced the acquisition. (*Id.*) Prior to any public disclosure of the acquisition, Carr disclosed Global's interest in and offer to acquire Heartland to Hanratty, who used that information to purchase and sell Heartland shares for both hers and Carr's benefit. (*Id.* ¶ 7.) Specifically, on November 9, 2015, Carr sent Hanratty an email stating that Global had just offered $97.50 per share for Heartland. (*Id.* ¶ 13.)

At some point between November 9 and November 16, 2015, Carr sent Hanratty an out-of-state check for her to deposit in her name to use the funds to purchase Heartland stock before Global's acquisition of Heartland went public. (*Id.* ¶ 17.) A November 16, 2016 email Hanratty sent Carr confirms this transaction:

> Made deposit. . . .
> Made arrangements with my bank to deposit the check and buy stock through their on line [sic] partner as soon as it clears in about 2 days.

(*Id.* ¶ 19.) The next day, Hanratty emailed Carr informing him that "[a]rrangements [were] made to purchase the [Heartland] stock as soon as the out of state check clears," and that she was "following [his] advice to the letter and keeping the amount [he] suggested in a saving account for now." (*Id.* ¶ 21.) The following day, Hanratty opened a new bank account and named Carr as the beneficiary of that account. (*Id.* ¶¶ 24-25.) On November 18, in response to an email sent by Hanratty stating she was a shareholder, Carr responded, "Our stock closed at $79.27 today – thanks for buying." (*Id.* ¶¶ 26-27.)

On November 24, 2015, Carr disclosed to Hanratty Global's offer of $97.50 per share in Heartland. (*Id.* ¶ 30.) After disclosing to Hanratty that Global offered $97.50 per share to acquire Heartland, Carr sent her approximately one million dollars to purchase Heartland stock. (*Id.* ¶ 34.) On April 12, 2016, Hanratty emailed Carr asking, "Is there any reason I shouldn't sell today at 101.37 which is more than the 100 sale price[?]" (*Id.* ¶ 41.) Carr responded: "No reason at all." (*Id.*)[2]

### B. Procedural Background

On May 29, 2018, Heartland filed a Complaint against Carr and Hanratty alleging three counts: (1) breach of fiduciary duty against Carr pursuant to Delaware law; (2) aiding and abetting breach of fiduciary duty against Hanratty pursuant to Delaware law; and (3) breach of contract against Carr. (ECF No. 1.)

On July 10, 2018, the Securities and Exchange Commission ("SEC") filed suit against Carr and Hanratty for insider trading in the District of Connecticut. (Ex. A. to ECF No. 36-2). Allegations in the complaint included:

> 49. The information described in the Complaint was material and nonpublic and was considered by Heartland to be confidential. Heartland had policies and procedures protecting confidential information.
>
> 50. Carr learned of the material nonpublic information described in the Complaint during the course of his employment as CEO of Heartland and had an obligation to protect the confidentiality of that information, as well as a fiduciary duty not to misuse such information for personal gain to himself or others.

---

[2] The Court notes that throughout its Complaint, Heartland cites to and attaches various email communications between Carr and Hanratty between November 9, 2015 and April 20, 2016 to support its allegations and claims that Hanratty knowingly participated in Carr's breaches of fiduciary duties. For efficiency purposes, the Court will address the relevant communications in the Decision section of this Opinion.

4

> 51. Carr tipped Hanratty to trade in the stock of Heartland based on the material nonpublic information in exchange for a direct or indirect personal benefit.
>
> 52. Hanratty knew or should have known that Carr breached his duty to Heartland and its shareholders when she traded in the stock of Heartland while in the possession of material nonpublic information.
>
> 53. As alleged herein, Carr and Hanratty directly or indirectly, singly or in concert, by the use of the means and instrumentalities of interstate commerce or of the mails, in connection with the purchase or sale of securities, intentionally, knowingly or recklessly: (a) employed or are employing devices, schemes or artifices to defraud; (b) made or are making untrue statements of material fact or omitted or is omitting to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or (c) engaged or are engaging in acts, practices or courses of business which operate as a fraud or deceit upon other persons.

(*Id.* ¶¶ 49-53.) On October 4, 2018, the District of Connecticut entered a "Final Judgment as to Defendant Katherine M. Hanratty," pursuant to which it was

> ORDERED, ADJUDGED, AND DECREED that [Hanratty] is liable for disgorgement of $250,628, representing profits gained as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of $27,351.82 and a civil penalty in the amount of $250,628 pursuant to Section 21 of the Exchange Act.

(Ex. 2. to ECF No. 36-2).

On November 26, 2018, Hanratty filed a Motion to Dismiss for Lack of Jurisdiction. (ECF No. 26.) On December 6, 2018, the Court stayed the matter without prejudice pending the determined of the Motion to Dismiss. (ECF No. 35.) Heartland opposed the Motion to Dismiss on December 26, 2018. (ECF No. 36.)

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing the court's jurisdiction over the defendant. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Although the plaintiff must ultimately prove personal jurisdiction by a preponderance of the evidence, such a showing is unnecessary at the early stages of litigation. *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). Instead, the plaintiff must "present[ ] a prima facie case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Id.* at 1223 (citations omitted). Because a Rule 12(b)(2) motion "is inherently a matter which requires resolution of factual issues outside the pleadings," the jurisdictional allegations may be supported with sworn affidavits or other documents. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). Once the plaintiff meets his or her burden, the burden shifts to the defendant to establish the presence of other considerations that would render the exercise of personal jurisdiction unreasonable. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992) (citation omitted).

### B. Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While as a general rule, a court many not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to

one for summary judgment pursuant under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.,* 184 F.3d 280, 287 (3d Cir.1999). Specifically, courts may consider any "'document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1426.

## III. DECISION

### A. Personal Jurisdiction, Generally

"[A] federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). In New Jersey, "courts may exercise jurisdiction over a nonresident defendant to the uttermost limits permitted by the United States Constitution." *Nicastro v. McIntyre Mach. Am., Ltd.*, 987 A.2d 575, 589 (2010), *rev'd on other grounds sub nom.*, *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011). "Accordingly, in determining whether personal jurisdiction exists, we ask whether, under the Due Process Clause, the defendant has certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007).

Personal jurisdiction may be established through general jurisdiction or specific jurisdiction over a defendant. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (noting that "opinions in the wake of the pathmarking *International Shoe* decision have differentiated between general or all-purpose jurisdiction, and specific or case-linked jurisdiction"). Heartland does not argue this Court has general jurisdiction over Hanratty. (ECF No. 36.) As such, the Court will only discuss specific jurisdiction.

8

Specific jurisdiction may be established over a defendant where the defendant "has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal citations omitted). More specifically, specific jurisdiction requires that: "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) the assertion of personal jurisdiction is reasonable and fair." *WAG Acquistion, LLC v. Multi-Media, LLC*, No. 14-1661, 2015 WL 5310203, at *12 (D.N.J. Sept. 10, 2015) (citation omitted); *Shuker v. Smith & Nephew, PLC*, No. 16-3785, 2018 WL 1096185, at *14 (3d Cir. Mar. 1, 2018) (stating "what is necessary [for specific jurisdiction] is a deliberate targeting of the forum") (citation omitted).

A court's exercise of personal jurisdiction "requires some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011) (emphasis added). Additionally, due process requires that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see also O'Connor*, 496 F.3d at 316 (discussing the three-step process in determining personal jurisdiction). Importantly, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being hauled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "[A] plaintiff's residence, by itself, is insufficient to establish personal jurisdiction" over a defendant. *Choi v. Damul Corp.*, No. 12-2440, 2014 WL 314669, at *7 (D.N.J. Jan. 27, 2014). "Once specific

9

jurisdiction is established, a defendant can be sued in the jurisdiction only in the matter from which the jurisdiction arises." *Boswell*, 2017 WL 2815077, at *3.

"In addition to this three-part test of specific jurisdiction, the Supreme Court has established a second analysis which is applicable to personal jurisdiction with respect to intentional tort claims." *Vizant Techs., LLC v. Whitchurch*, 97 F. Supp. 3d 618, 628 (E.D. Pa. 2015). In *Calder v. Jones*, 465 U.S. 783 (1984), the plaintiff sued two residents of Florida for libel because of a published article. The Court found that the author and editor of the article were subject to jurisdiction in California based on the "effects" of their Florida actions in California because the defendants aimed their intentional, tortious activity at California. *Id.* at 789-90 (citations omitted). "[T]hey knew [the article] would have a potentially devastating impact upon respondent. And they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the National Enquirer has its largest circulation." *Id.* As a result, the Court determined the defendants could "reasonably anticipate being haled into court" in California. *Id.* at 790 (citations omitted).

The Third Circuit has since determined that *Calder* permits a plaintiff to establish personal jurisdiction with respect to intentional torts as long as the following three elements are satisfied:

>   (1) The defendant committed an intentional tort;
>
>   (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and]
>
>   (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

*Marten*, 499 F.3d at 297 (citation omitted). "If a plaintiff satisfies these three elements, known collectively as the 'effects test,' the plaintiff can demonstrate a court's jurisdiction over a defendant

even when the defendant's 'contacts with the forum alone . . . are far too small to comport with the requirements of due process under our traditional analysis." *Id.* (citation omitted).

1. **Personal Jurisdiction as to Hanratty**

Hanratty argues the Court lacks personal jurisdiction over her because she lacks sufficient minimum contacts with New Jersey to subject her to suit in this Court. (ECF No. 28-1 at 9.) Specifically, she argues that Heartland's "allegations in support of specific jurisdiction[] over [her] primarily relate to [her] activities outside of New Jersey, including telephone and/or email communications with Carr while Carr was in New Jersey or activities of Carr in New Jersey that Heartland seeks to attribute to Hanratty." (*Id.*) In addition, Hanratty contends Heartland has not alleged facts sufficient to satisfy the *Calder* "effects test" because it has not demonstrated Hanratty "expressly aimed" any tortious activity at New Jersey. (ECF No. 28-1 at 12.)

Heartland argues the Court has personal jurisdiction over Hanratty pursuant to specific jurisdiction because

> Hanratty aided and abetted breaches of fiduciary duty by the CEO and Chairman of a corporation headquartered in New Jersey. She did so by repeatedly communicating with him while he worked and lived in New Jersey to obtain material, non-public information and to plan and implement an unlawful insider trading scheme. Further, she was repeatedly present in New Jersey during the relevant time period, including staying with Carr at his home in Princeton. And while Hanratty was in New Jersey, she arranged to buy [Heartland] stock with funds he provided.

(ECF No. 36 at 20 (emphasis omitted).) Heartland further asserts the Court has jurisdiction over Hanratty under the *Calder* "effects test" because she committed an intentional tort that was aimed at and harmed a corporation headquartered in New Jersey. (*Id.* at 33.)

The Court recognizes the well-settled principles governing personal jurisdiction that mandate that Heartland must ultimately prove personal jurisdiction by a preponderance of the

11

evidence, but "at this juncture it need only make a *prima facie* showing that the Court has personal jurisdiction over defendants." *Osteotech, Inc. v. GenSci Regeneration Scis., Inc.*, 6 F. Supp. 2d 349, 353 (D.N.J. 1998) (citation omitted). "A plaintiff makes a *prima facie* showing if he establishes, with reasonable particularity, sufficient contacts between the defendant and the forum state." *Id.* (citation omitted). Pursuant to these principles, the Court agrees with Heartland and finds that it has made a *prima facie* showing, with reasonable particularity, that this Court has personal jurisdiction over Hanratty pursuant to the traditional analysis. Because the Court finds jurisdiction under this test, it will not address the *Calder* "effects test."

Specific jurisdiction requires that: "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) the assertion of personal jurisdiction is reasonable and fair." *WAG Acquistion, LLC*, 2015 WL 5310203, at *12. The Court will address each element in turn.

Per the first element, there are numerous allegations in the Complaint and exhibits that articulate with reasonable particularity that Hanratty purposefully directed her activities of aiding and abetting Carr's breaches of fiduciary duty from November 2015 to April 2016. The record demonstrates Hanratty purposefully directed her activities at Heartland, which was headquartered in New Jersey during the relevant time period, and Carr, who resided there. Specifically, she directed emails to the forum, spoke with Carr while he was in the forum, repeatedly visited the forum, and discussed the alleged insider trading scheme with Carr while in the forum.

Indeed, there are allegations and emails indicating Hanratty discussed the alleged insider trading scheme with Carr while in New Jersey and that she took several actions in furtherance of aiding and abetting Carr while in New Jersey. The record reflects that on November 16, 2015, Hanratty, while in New Jersey, reached out to Carr via email to inform him that she "[m]ade

12

arrangements with [her] bank to deposit the check [he sent her] and buy [Heartland] stock through their on line partner as soon as it clears in about 2 days." (ECF No. 1 ¶ 19; *see also* Exs. 9-13 to ECF No. 36-3 (indicating Hanratty was in New Jersey at the time she sent the email regarding her bank).) On November 24, 2015, Carr disclosed to Hanratty, via email, while she was in New Jersey that he "[j]ust got the [Global] offer - $97.50," to which she replied "Wonderful. Remember Emmalee said $100 or nothing. Lol I am here and eating some soup from Olives before I unpack. Long long drive. Glad to be here and see you soon." (Ex. H to ECF No. 1-2.) On November 30, 2015, while in New Jersey, Hanratty sought and received inside information from Carr via email. Specifically, at the closing of an email she stated, "Hope the due diligence thing you shared has worked itself out or will shortly." (Ex. 22 to ECF No. 36-4.) Carr responded by stating, "I just talked to the CEO of Global and he has cut back on the due diligence requests and all seems to be back on track." (*Id.*)

The record also reflects that Hanratty reached out to Carr, while she was in Connecticut and he was in New Jersey, in furtherance of the insider trading scheme. On April 11, 2016, Hanratty emailed Carr to inform him that she was meeting "with the person at Webster Bank Investments tomorrow" to ask him if she should "put in [her] sell order now or wait until next week" and to inquire as to how to "get the money to [Carr] or Peter to invest as [] discussed this weekend." (ECF No. 1 ¶ 36; Ex. I to ECF No. 1-2; *see* Ex. 29 to ECF No. 36-4 (demonstrating Carr was in New Jersey on April 11, 2016).) The following day, she emailed him again and asked, "Is there any reason I shouldn't sell today at [$]101.37 which is more than the [$]100 sale price." (ECF No. 1 ¶ 41.)

The above communications are more than enough to establish purposeful availment at this stage of the litigation. Courts have found "various forms of communications between parties,

including written correspondence, telephone calls, and emails, may properly factor into the minimum contacts analysis." *Williams v. Ying Zhou*, No. 14-5544, 2018 WL 648354, at *4 (D.N.J. Jan. 30, 2018); *see Grant Entm't Grp., Ltd. v. Star Media Sales*, 988 F.2d 476, 482 (3d Cir. 1993) (finding that written correspondence and phone calls may count toward minimum contacts regarding foreign defendants). "[W]hen the plaintiff can proffer evidence of a defendant deliberately directing mail, telephone, and/or email communications to the forum state," then a finding of personal jurisdiction is proper. *Arthur Schuman, Inc. v. Banco Santander Brasil*, S.A., No. 06–1331, 2008 WL 320430, at *5 (D.N.J. Jan. 30, 2008) (citation omitted). In *Carteret Savings Bank, FA*, the Third Circuit found that telephone calls and correspondence sent into New Jersey from Louisiana, coupled with a meeting in New Jersey to facilitate the closing of a loan, provided the minimum contacts needed to satisfy due process. 954 F.2d at 146–48. Here, the Complaint and exhibits demonstrate Hanratty purposefully directed numerous email communications to New Jersey and visited New Jersey on multiple occasions.

Moreover, courts have found personal jurisdiction where the Complaint alleges "that Defendant directed 'repeated' communications toward this forum, and explains that these intentional communications form the fabric of her underlying suit." *Pronesti* v. *Nat'l Credit Adjusters*, No. 15-6319, 2016 WL 1598858, at *2 (D.N.J. Apr. 20, 2016) (citations omitted). Hanratty's email correspondences toward Carr, a resident of New Jersey, clearly form the fabric of Heartland's suit. The emails discussed above all pertain to the alleged insider trading scheme.

Regarding the second element, the claim against Hanratty, aiding and abetting, arises out of or relates to Hanratty's emails correspondences. As demonstrated, Hanratty sent and received emails to and from New Jersey to obtain non-public information and to coordinate with Carr and implement the alleged insider trading scheme. In addition, she sought and received insider

information and arranged to buy Heartland stock while in New Jersey. As such, this element is satisfied.

With respect to the last element, Hanratty has "not persuaded the Court that jurisdiction is unreasonable or violates traditional notions of fair play and substation justice." *Formula One Licensing BV v. Valentine*, No. 14-5812, 2016 WL 7175591, at *7 (D.N.J. Dec. 8, 2016) (citation omitted). "Once the plaintiff has made out a prima facie case in favor of personal jurisdiction, the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (citations omitted). In determining whether jurisdiction violates traditional notions of fair play and substantial justice, the Court considers several factors: "the burden on the defendant, the interests of the forum state, plaintiff's interests in obtaining relief, the interstate judicial system's interest in obtaining efficient resolution of controversies, and, if relevant, the shared interest of the several states in furthering substantive social policies." *Id.*

Here, the Court concludes these factors weigh in favor of exercising jurisdiction. The Court finds Hanratty's travel to New Jersey to defend this suit does not present a burden, as evidenced through her repeated visits to New Jersey to visit Carr. Moreover, "New Jersey has a 'manifest interest' in providing an effective means of redress against defendants." *Williams*, 2018 WL 648354, at *6. Lastly, it would be efficient to keep Hanratty's matter in New Jersey since the matter against Carr would take place in this Court. As such, applying all three elements, the Court finds that it possesses personal jurisdiction over Hanratty. Accordingly, Hanratty's Motion to Dismiss for lack of personal jurisdiction is **DENIED**.

### B. Motion to Dismiss Count Two Pursuant to Rule 12(b)(6)

Count Two of the Complaint alleges Hanratty aided and abetted Carr's breach of fiduciary duty against Heartland. (See ECF No. 1 ¶¶ 124-49.) Hanratty argues it should be dismissed because "[t]he Complaint does not state a single non-conclusory allegation from which this Court can infer that Hanratty acted with knowledge that Carr allegedly breached his fiduciary duties." (ECF No. 28-1 at 14.) In response, Heartland contends

> it is more than plausible that Hanratty: knew she was seeking an receiving material, non-public information; knew Carr had a fiduciary duty to maintain the confidentiality of that information; knew he had a fiduciary duty not to buy or tip another person to buy [Heartland] stock based on that material, non-public information; and knew her conduct—receiving funds from Carr, coordinating with him to use those funds to buy [Heartland] stock before the public announcement of the Global/[Heartland] transaction and to sell the stock at a higher price thereafter—constituted participation in breaches of fiduciary duties.

(ECF No. 36 at 7.)

Heartland brings the aiding and abetting breach of fiduciary duty claim against Hanratty under Delaware law since Heartland is incorporated in Delaware. All parties agree Delaware law applies to this claim. *See In re Fedders N. Am., Inc.*, 405 B.R. 527, 543 (Bankr. D. Del. 2009) (stating "the internal affairs doctrine compels the Court to apply Delaware law to the claim for aiding and abetting breach of fiduciary duty"); *Fagin v. Gilmartin*, 432 F.3d 276, 282 (3d Cir. 2005) ("Under New Jersey's choice-of-law rules, the law of the state of incorporation governs internal corporate affairs.").

Pursuant to Delaware law, "[a] third party may be liable for aiding and abetting a breach of a corporate fiduciary's duty . . . if the third party 'knowingly participates' in the breach." *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001); *Gilbert v. El Paso Co., Del. Ch.*, 490

A.2d 1050, 1057 (Del. 1984) ("It is well settled that a third party who knowingly participates in the breach of a fiduciary's duty becomes liable to the beneficiaries of the trust relationship.") (citations omitted). To survive a motion to dismiss, a plaintiff "must allege facts that satisfy the four elements of an aiding and abetting claim: (1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, . . . (3) knowing participation in that breach by the defendants, and (4) damages proximately caused by the breach." *Malpiede*, 780 A.2d at 1096.

Hanratty does not contend that the Complaint fails to allege the first, second, or fourth elements. (*See* ECF No. 28-1 and ECF No. 37.) As such, the Court will only address the third element. Knowing participation "can be logically inferred by reasonable inferences drawn from facts alleged in the Complaint that, if the directors in fact breached their fiduciary duty, [defendant] may have knowingly participated in, and been actively involved in, the breach." *Zirn v. VLI Corp.*, No. 9488, 1989 WL 79963, at *6 (Del. Ch. July 17, 1989).

The Court finds that, although the Complaint fails to state a "smoking gun" non-conclusory statement that Hanratty "knowingly participated" in Carr's breach of fiduciary duty, it can be logically inferred by reasonable inferences drawn from facts alleged in the Complaint that Hanratty knowingly participated in, and was actively involved in, the breach. *Id.* On November 9, 2015, Hanratty emailed Carr, "Have a good meeting with Global!" (ECF No. 1 ¶ 12.) Later that same day, she sent him another email asking, "How was your meeting at Global?" (*Id.*) Carr responded, "Meeting was good. Price is $97.50 and closing would be late December." (*Id.* ¶ 13.) Hanratty's reaction to his email was, "Wow quite an offer." (*Id.* ¶ 14.) Her reaction indicates that it is more than plausible that she understood the terms, pricing and timing of the stock, were material and confidential, considering the closing would not occur until December. Also, a plausible inference can be drawn that Hanratty understood, as a reasonable person would, that Carr, the CEO and

17

Chairman of Heartland, had a fiduciary duty to maintain the confidentiality of the information disclosed at the Global meeting.

The Complaint also alleges Carr gave Hanratty a check between November 9 and 16, 2015, for the specific purposes of purchasing Heartland stock prior to the acquisition. (*Id.* ¶ 17.) The Complaint further alleges Hanratty bought the Heartland stock prior to the acquisition. (*Id.* ¶¶ 26-27.) The fact that Carr sent this check only after he received Global's non-public offer and that the purpose of the check was to buy Heartland stock prior to the acquisition infers Carr was seeking to profit from, or to have Hanratty profit from, his inside information. Moreover, it is plausible Hanratty understood Carr's disclosure and request to buy stock prior to the acquisition was a breach of his fiduciary duties to Heartland.

Lastly, the Complaint alleges Hanratty emailed Carr regarding the sale of the Heartland stock, asking, "Is there any reason I shouldn't sell today at [$]101.37 which is more than the [$]100 sale price." (*Id.* ¶ 41.) This inquiry indicates Hanratty was sophisticated enough to understand the process and timing of purchasing stocks, drawing the inference that she also understands the concept of insider trading and non-public information. Indeed, the fact that Hanratty sold the stock only after the public announcement of the acquisition, only after the price had risen by approximately 25%, and only after coordinating with Carr furthers the inference that she knowingly participated in his scheme to have them benefit from the non-public information Carr acquired.

In looking at the Complaint in the light most favorable to Heartland, the Court can infer that Hanratty aided and abetted Carr's breach of fiduciary to Heartland. Accordingly, Hanratty's Motion to Dismiss is **DENIED**.

**IV. CONCLUSION**

    For the reasons set forth above, Hanratty's Motion to Dismiss (ECF No. 28) is **DENIED**.

Date: February 27, 2019                            */s/ Brian R. Martinotti*
                                                    **HON. BRIAN R. MARTINOTTI**
                                                    **UNITED STATES DISTRICT JUDGE**