## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

HEARTLAND PAYMENT SYSTEMS, LLC, )
                                 )

          Plaintiff, )

    v. )

ROBERT O. CARR and KATHIE )
HANRATTY, )
                                 )

          Defendants. )

Civil Action No. 3:18-cv-09764-BRM-DEA

*DOCUMENT FILED ELECTRONICALLY*

Motion Date: June 3, 2019

---

## DEFENDANT ROBERT O. CARR'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A PARTIAL EXTENSION OF THE STAY OF PROCEEDINGS

Peter L. Welsh
Daniel N. Swartz
William Piereson
ROPES & GRAY LLP
800 Boylston Street
Boston, MA 02199-3600
(617) 951-7000
peter.welsh@ropesgray.com
daniel.swartz@ropesgray.com

Paul S. Kellogg
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
(212) 841-8823
paul.kellogg@ropesgray.com
*Attorneys for Defendant Robert O. Carr*

Jeffrey A. Carr
Matthew V. DelDuca
PEPPER HAMILTON LLP
Suite 400
301 Carnegie Center
Princeton, NJ 08543-5276
609.452.0808
carrj@pepperlaw.com
*Attorneys for Defendant Robert O. Carr*

Dated: May 9, 2019

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ............................................................ 1

II.  STATEMENT OF FACTS ................................................................ 2

III. LEGAL STANDARD ...................................................................... 6

IV. ARGUMENT ................................................................................ 7

    A.  HEARTLAND'S *BROPHY* CLAIM SHOULD BE STAYED IN ITS ENTIRETY. ......... 7

        1.  The Criminal And Civil Cases Substantially Overlap. ................... 7

        2.  The Status of the Criminal Investigation Supports Granting a Stay. .............. 8

        3.  Plaintiff Would Not Be Prejudiced By A Partial Stay. .................... 9

        4.  Carr May Be Severely Prejudiced By The Absence Of A Stay. .................... 14

        5.  Staying The Insider Trading Portion Of The Case Would Serve The Interests Of The Court. .................... 15

        6.  A Stay Will Benefit The Public. .................... 16

V.  A PARTIAL STAY WILL ALLOW THE PARTIES TO PROCEED TO LITIGATE THE ALLEGED VIOLATIONS OF THE NON-COMPETE AND NON-SOLICITATION AGREEMENTS. .................... 17

VI. CONCLUSION .................... 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Colombo v. Bd. of Educ. For the Clifton School Dist., No. 11-00785 (CCC), 2011
WL 5416058 (D.N.J. Nov. 4, 2011) ...................................................................14, 16

Cont'l Ins. Co. v. Securi Enters., Inc., No. 10-4586-MLC, 2010 WL 5392735
(D.N.J. Dec. 21, 2010) ..........................................................................1, 8, 9, 14

De'Omilia Plastic Surgery, PC v. Sweeton, No. 12-CV-06415-FLW, 2013 WL
6070037 (D.N.J. Nov. 18, 2013)...........................................................................15

In re Fitbit, Inc. Stockholder Deriv. Litig., 2019 WL 190933 (Del. Ch. Jan. 14,
2019) ...................................................................................................................12

GEICO v. Zuberi, No. 15-4895-JLL, 2015 WL 5823025 (D.N.J. Oct. 1, 2015).......................8, 16

In re Herley Indus. Inc. Sec. Litig., No. 06-2596, 2007 WL 1120246 (E.D. Pa.
Apr. 11, 2007) ......................................................................................................10

Kahn v. Kolberg Kravis Roberts & Co., L.P., 23 A.3d 831 (Del. 2011) .........................................9

Kaplan v. S.A.C. Capital Advisors, L.P., 40 F. Supp.3d 332 (S.D.N.Y. 2014) .............................13

Landis v. N. Am. Co., 299 U.S. 248 (1936) ...................................................................................1

Lee v. Pincus, No. 8458-CB, 2014 WL 6066108 (Del. Ch. Nov. 14, 2014) .................................13

Litton Indus. v. Lehman Bros. Kuhn Loeb Inc., 734 F. Supp. 1071 (S.D.N.Y.
1990) ....................................................................................................................13

LM Ins. Corp. v. FAV Transp., LLC, No. 14-5424-MAS, 2015 WL 4915677
(D.N.J. Aug. 18, 2015)..........................................................................1, 8, 9, 14

Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83 (2d Cir. 2012)......................................8

Maloney v. Gordon, 328 F. Supp.2d 508 (D. Del. 2004)........................................................14, 16

Mitchell v. United States, 526 U.S. 314 (1999) ...........................................................................15

Nat'l Westminster Banc. NJ v. Leone, 702 F. Supp. 1132 (D.N.J. 1988)......................................13

In re Oracle Corp., 867 A.2d 904 (Del. Ch. 2004)........................................................................9

Peterson v. Matlock, No. 11-2594-FLW, 2011 WL 5416571 (D.N.J. Nov. 7,
2011) ..........................................................................................................1, 7, 14

*Pfeiffer v. Toll*, 989 A.2d 683 (Del. Ch. 2010) .................................................................10

*Robert O. Carr v. Global Payments Inc., et al.*, No. 2018-0565-SG (Del. Ch. July 30, 2018) .................................................................................................................3, 4, 8

*SEC v. Desai*, 672 F. App'x 201 (3d Cir. 2016) (per curiam) ........................................8

*SEC v. Dresser Indus.*, 628 F.2d 1368 (D.C. Cir. 1980)...............................................15

*Securities and Exchange Comm'n v. Robert O. Carr*, 18-cv-1135 (D. Conn. Apr. 22, 2019), ECF No. 44-1 ...............................................................................................12

*Securities and Exchange Comm'n v. Robert O. Carr, et al.*, 18-cv-1135 (D. Conn.).................................................................................................................3, 12

*Securities and Exchange Comm'n v. Robert O. Carr, et al.*, 18-cv-1135 (D. Conn. Apr. 22, 2019), ECF No. 44 ......................................................................................3, 12

*Securities and Exchange Comm'n v. Robert O. Carr, et al.*, 18-cv-1135 (D. Conn. Oct. 4, 2018), ECF No. 23 .........................................................................................3, 12

*Teva Pharm. Indus., Ltd. v. Apotex, Inc.*, 2008 WL 3413862 (D.N.J. Aug. 8, 2008)...................17

*United States v. All Articles of Other-Sonic Generic Ultrasound Transmission Gel*, No. 12-2264-ES-SCM, 2013 WL 1285413 (D.N.J. Mar. 27, 2013) ..................8

*In re Valeant Pharm. Int'l, Inc.*, No. 16-3087-MAS-LHG, 2017 WL 3429342 (D.N.J. Aug. 9, 2017)...................................................................................................7

*Walsh Secs., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523 (D.N.J. 1998)6, 7, 8, 10, 14, 15, 16

**STATUTES**

*28 U.S.C. § 1332(a)* ..........................................................................................................11

Defendant Robert O. Carr respectfully submits this brief in support of his Motion for a Partial Extension of the Stay of Proceedings. Carr submits herewith the Declaration of Michael G. McGovern ("McGovern Decl."), the Declaration of Jeffrey A. Carr ("Jeffrey A. Carr Decl."), and the exhibits thereto in support of the motion.

## I.    PRELIMINARY STATEMENT

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). And courts have long exercised that discretion to stay civil litigation in light of parallel criminal investigations, recognizing that forcing a civil defendant to litigate the case against the backdrop of the criminal proceedings presents an untenable Hobson's Choice. *See, e.g., LM Ins. Corp. v. FAV Transp., LLC*, No. 14-5424-MAS, 2015 WL 4915677 (D.N.J. Aug. 18, 2015); *Peterson v. Matlock*, No. 11-2594-FLW, 2011 WL 5416571 (D.N.J. Nov. 7, 2011); *Cont'l Ins. Co. v. Securi Enters., Inc.*, No. 10-4586-MLC, 2010 WL 5392735 (D.N.J. Dec. 21, 2010).

As the Court is aware, this is precisely the situation confronting Mr. Carr: He is currently facing a criminal investigation by the United States Attorney's Office for the District of Connecticut (the "USAO"). The subject matter of that investigation (the "USAO Investigation") is virtually identical to the insider trading allegations set forth in the complaint filed in these proceedings (the "Complaint"). As a result of the USAO Investigation, Carr cannot fully and effectively litigate the merits of the allegations underlying Count One—the insider trading count—of the Complaint without potentially compromising his constitutional rights, and therewith his defense of the criminal matter.

Accordingly, Carr requests that Count One of the Complaint remain stayed and that the parties enter into a confidentiality and bifurcation order, and discovery plan so that they can proceed to litigate Plaintiff's claims concerning the alleged breaches of the restrictive covenants. Applicable law favors a stay of Count One of the Complaint: If Carr were forced to litigate the underlying merits of Count One at this point in time, he would effectively be forced to choose between defending himself in the criminal investigation or in the civil proceedings. Conversely, at this point, Plaintiff has no substantial interest in proceeding to litigate Count One, let alone immediately, and Plaintiff will not be prejudiced if the stay is partially maintained—that is, as to Count One only—in order to protect Carr's constitutional rights and ability to defend against a criminal proceeding. As such, the interests of justice support a stay of Count One of this action in light of the ongoing parallel criminal proceedings.

## II.    STATEMENT OF FACTS

Carr is the founder and former Chairman and CEO of Heartland Payment Systems, Inc. ("HPS"). In December 2015, HPS and Global Payments, Inc. ("Global") entered into an agreement and plan of merger, whereby HPS became a wholly owned subsidiary of Global. *See* Compl. ¶¶ 62–66.

In recent months, Carr has been defending himself in the USAO Investigation, which concerns the same alleged circumstances, events, witnesses, and documents as those at issue in Count One of the instant proceedings. Just as the Complaint alleges—among other things—that Carr

> improperly disclosed material, non-public information regarding [Global's] potential acquisition of and offer to acquire HPS to . . . Kathie Hanratty; [and] improperly engaged in insider trading by sending Hanratty funds to purchase HPS stock in advance of the public announcement that Global was acquiring HPS for a premium . . . .

Compl. ¶ 2, the USAO Investigation focuses on precisely the same alleged trading in the stock of HPS by Hanratty, and whether Carr acted wrongfully in connection therewith, by allegedly "tipping" Hanratty with confidential information concerning the HPS acquisition to Hanratty. *See* McGovern Decl. ¶¶ 3–6. The USAO first asked to interview Carr in connection with an investigation of Hanratty in January 2018. *See id.* ¶ 5. In late March 2018, the USAO indicated that Carr's conduct was also under investigation. *See id.* ¶ 6. Carr and his counsel understand that the USAO issued grand jury subpoenas in connection with the USAO Investigation in November 2018 and that multiple witnesses provided testimony before the grand jury in December 2018.[1] *See id.* ¶ 10. Carr's attorneys have been in contact with the USAO throughout the pendency of the USAO Investigation, which remains active and ongoing. *See id.* ¶¶ 4, 6, 7, 11.

Plaintiff has been well aware of the government's investigation into alleged insider trading since at least February of 2018, when Carr contacted Plaintiff's parent company to request advancement of legal fees and expenses, as provided under the merger agreement between Global and HPS. *See* Compl. Ex. H, Dkt. No. 10, *Robert O. Carr v. Global Payments*

---

[1] Relatedly, Carr is a defendant in an enforcement action brought by the Securities and Exchange Commission, captioned *Securities and Exchange Comm'n v. Robert O. Carr, et al.*, 18-cv-1135 (D. Conn.) (the "SEC Action"). Carr recently entered into a settlement agreement with the SEC, whereby Carr neither admitted nor denied the allegations against him, and agreed to pay a civil penalty of $250,628. *See* Consent Motion to Approve Consent Judgment as to Robert Carr, *Securities and Exchange Comm'n v. Robert O. Carr, et al.*, 18-cv-1135 (D. Conn. Apr. 22, 2019), ECF No. 44. The SEC and Carr have left it to the district court to determine whether (and if so, for how long) to bar Carr from serving as the director or officer of a publicly traded company. *See id.* The district court has yet to approve of the proposed settlement.

Moreover, Carr's co-defendant, Kathie Hanratty, was also a defendant in the SEC Action. In October 2018, Hanratty entered into a consent judgment with the SEC, whereby she neither admitted nor denied the allegations against her, and paid a civil penalty of $250,628 as well as disgorgement of approximately $277,980 (including prejudgment interest). *See* Order Granting Motion to Approve Consent Judgment, *Securities and Exchange Comm'n v. Robert O. Carr, et al.*, 18-cv-1135 (D. Conn. Oct. 4, 2018), ECF No. 23.

*Inc., et al.*, No. 2018-0565-SG (Del. Ch. July 30, 2018); *see also* Exh. A to Defendant's Mot. for Leave to File Amended Ans. ¶¶ 30–31 Dkt. No. 48, *Robert O. Carr v. Global Payments Inc., et al.*, No. 2018-0565-SG (Del. Ch. Oct. 1, 2018) (*hereinafter* "Del. Proposed Amended Ans.").

Months after learning of the USAO Investigation, Plaintiff brought suit against Carr and his co-defendant, Kathie Hanratty ("Hanratty"). The instant Complaint consists of two causes of action against Carr and one against Hanratty. The first (Count One) is a Delaware state-law claim—sometimes referred to as a *Brophy* claim—which alleges that Carr breached a fiduciary duty owed to his former employer, HPS, by allegedly engaging in insider trading. *See* Compl. ¶¶ 89–123. The relief requested in respect of Plaintiff's so-called *Brophy* claim consists principally of disgorgement of any illicit profits as well as fees, costs and expenses incurred by Heartland as a result of the alleged insider trading activity.*See id.* ¶¶ 122–23. The second (Count Three) is a state-law claim for breach of contract, alleging that Carr breached a confidentiality agreement with his former employer and violated other restrictive covenants in his employment agreement.[2]*See id.* ¶¶ 150–89.

At the outset of the case, Carr sought a stay of the instant proceedings because the pending USAO Investigation impeded his ability to answer the Complaint and meaningfully litigate this action. Prior to moving for a stay, Carr's attorneys contacted counsel for Plaintiff. Plaintiff's counsel indicated that Plaintiff would not oppose a request for a stay of up to two months, provided that Carr stated that the reason for requesting the stay was due to the SEC's and USAO's investigations. *See* Jeffrey A. Carr Decl. ¶ 2. Carr then moved for a stay, which was unopposed, *see* Mot. to Stay, July 3, 2018, ECF No. 13, and this Court granted the motion. *See* Ord. Staying Proceedings, July 10, 2018, ECF No. 22.

---

[2] Count Two of the Complaint alleges that Hanratty aided and abetted Carr's breach of fiduciary duty and does not apply to Carr. *See id.* ¶¶ 124–149.

Thereafter, on or about August 16, 2018, the Parties met and conferred regarding extending the stay. At that time, Plaintiff initially proposed that the stay continue as to the insider trading allegations only. *See* Jeffrey A. Carr Decl. ¶¶ 3–4. In suggesting that the Parties litigate the portion of the case concerning only whether Carr breached anti-competitive restrictive covenants in his employment agreement, Plaintiff's counsel proposed that Heartland would not "seek discovery into insider trading or the concealment thereof" and that Carr would "be permitted to make an objection to any discovery or pleading on that ground." *Id.* ¶ 4, Ex. 2. Shortly thereafter, instead of reaching agreement on bifurcation of the case at that time, Plaintiff offered "as a sign of good faith to extend the stay in the entire case for two more months," in order to give Carr an opportunity to fully consider Plaintiff's original bifurcation proposal. *Id.* ¶ 5, Ex. 3. This Court approved the extension of the stay on that basis. *See* Order Extending Stay, Aug. 23, 2018, ECF No. 24.

Thereafter, pursuant to the August 23 Order, on or about October 11, 2018 and October 19, 2018, the Parties met and conferred again regarding whether to extend the stay further. Although the status quo remained essentially unchanged, Plaintiff stated at that time that it now opposed any extension of the stay, or any bifurcation of the proceedings. Accordingly, Carr moved to extend the stay of proceedings and enlarge the time to respond to the Complaint. *See* Mot. To Extend the Stay of Proceedings & to Enlarge Time, Oct. 26, 2018, ECF No. 25. The parties completed briefing on Carr's motion on November 13, 2018. *See* Reply Br. to Opp. to Mot. to Extend the Stay, Nov. 13, 2018, ECF. No. 27. However, without ruling on the motion, the Court administratively terminated Carr's motion (without prejudice to his ability to refile it later) and stayed all proceedings pending resolution of Hanratty's then-pending motion

to dismiss for lack of personal jurisdiction. *See* Order Staying Case Without Prejudice & Administratively Terminating Mot. to Extend Stay, Dec. 6, 2018, ECF. No. 35.

After the Court subsequently denied Hanratty's motion to dismiss, *see* Op. Denying Mot. to Dismiss, Feb. 27, 2019, ECF No. 42, the Parties jointly agreed to extend the stay until the earlier of May 10, 2019 or the date of any decision by the USAO with regard to the pending criminal investigation, *see* Order Extending Stay, Mar. 26, 2019, ECF. No. 47.

Pursuant to the Court's order extending the stay, on or about April 21, 2019, the Parties met and conferred regarding an additional stay of proceedings, but could not come to an agreement. *See* Letter from Jeffrey A. Carr, Apr. 26, 2019, ECF. No. 49. The Parties thereafter agreed (1) on a proposed briefing schedule for a motion to extend the stay, (2) that the stay will remain in place until the Court's decision on that motion, and (3) that Carr would answer the Complaint within fourteen days of the expiration of the stay. *Id.* The Court approved this process. Order Extending Stay, Apr. 26, 2019, ECF No. 50.

## III. LEGAL STANDARD

This Court possesses the inherent "discretion to stay a case if the interests of justice require it." *Walsh Secs., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523, 526 (D.N.J. 1998). As is well-settled, a stay of civil proceedings is often especially appropriate when a civil defendant is simultaneously defending himself in a parallel criminal investigation or proceeding. *See id.* In determining whether civil proceedings should be stayed in light of parallel criminal proceedings, courts apply the *Walsh* factors, which weigh: (1) the extent to which the issues in the criminal and civil cases overlap; (2) the status of the criminal case; (3) the plaintiff's interests; (4) the prejudice to the defendant; (5) the interests of the court; and (6) the public

interest. *See id.* at 526–27. As discussed below, each of the *Walsh* factors favors staying Heartland's *Brophy* claim in light of the ongoing USAO Investigation.

## IV. ARGUMENT

### A. HEARTLAND'S *BROPHY* CLAIM SHOULD BE STAYED IN ITS ENTIRETY.

#### 1. The Criminal And Civil Cases Substantially Overlap.

"[T]he extent to which the criminal and civil cases overlap is 'the *most important issue* at the threshold' in determining whether or not to grant a stay." *In re Valeant Pharm. Int'l, Inc.*, No. 16-3087-MAS-LHG, 2017 WL 3429342, at *2 (D.N.J. Aug. 9, 2017) (internal quotation marks omitted) (emphasis added). And this factor supports staying a civil proceeding where—as here—the parallel civil and criminal proceedings both rely on "common witnesses, events, and documents," there is sufficient overlap to warrant a stay. *Id.*

This standard is easily met here: "[w]hile the specifics of the criminal investigation have yet to be fully elucidated," Plaintiff's insider trading allegations and the USAO Investigation are almost exactly coextensive. *See Peterson v. Matlock*, No. 11-2594-FLW, 2011 WL 5416571, at *4 (D.N.J. Nov. 7, 2011). Plaintiff does not dispute this; nor could it. Indeed, the Complaint alleges that Carr engaged in insider trading while employed at HPS and that this alleged misconduct in turn supposedly breached a fiduciary duty to (and contract with)[3] HPS. *See, e.g.*, Compl. ¶¶ 89–123, 150–89. As Plaintiff admits, those allegations concern *precisely* the circumstances being investigated by the USAO in its criminal investigation

---

[3] In alleging that Carr breached his employment agreement by misappropriating Heartland's confidential information, Plaintiff has made the alleged insider trading a predicate for liability in Count Three. *See, e.g.*, Compl. ¶¶ 161, 166–76, 185–86. Thus, even Count Three overlaps with the subject-matter of the USAO Investigation. Nevertheless, as discussed *infra*, Carr believes that the entry of a suitable confidentiality and bifurcation order and discovery plan would allow the parties to litigate Count Three and that the interests of justice would be served by doing so.

of Carr. *See* Del. Proposed Amended Ans. ¶ 2, Dkt. No. 48. *Robert O. Carr v. Global Payments Inc., et al.*, No. 2018-0565-SG (Del. Ch. Oct 1, 2018). *See also* McGovern Decl. ¶ 3. Both proceedings will draw upon the same witnesses, the same documents, and even the same defenses and legal theories. Plainly, the parallel proceedings overlap to a significant degree, which strongly militates in favor of a stay. *See, e.g.*, *GEICO v. Zuberi*, No. 15-4895-JLL, 2015 WL 5823025, at *7 (D.N.J. Oct. 1, 2015); *see also SEC v. Desai*, 672 F. App'x 201, 205 (3d Cir. 2016) (per curiam).

## 2. The Status of the Criminal Investigation Supports Granting a Stay.

The second *Walsh* factor—the status of the criminal investigation—asks principally whether the risk of self-incrimination and the concomitant exposure to criminal liability is "remote or purely hypothetical," rather than likely or imminent. *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 100 n.14 (2d Cir. 2012). Determining whether this factor weighs in favor of a stay requires a court to evaluate each case individually and on its own terms. *See Walsh*, 7. F. Supp. 2d at 527. Importantly, courts can and often do grant stays in light of parallel criminal investigations, even if the defendant has not yet been indicted. *See, e.g.*, *Cont'l Ins. Co.*, 2010 WL 5392735, at *9–10, 11; *see also LM Ins. Corp*, 2015 WL 4915677, at *2; *United States v. All Articles of Other-Sonic Generic Ultrasound Transmission Gel*, No. 12-2264-ES-SCM, 2013 WL 1285413, at *2–3 (D.N.J. Mar. 27, 2013).

This factor supports extending the stay of Heartland's *Brophy* claim. Specifically, although Carr has not been charged, his counsel has been in communication with the USAO and the investigation is continuing. *See* McGovern Decl. ¶¶ 10–11. *See Cont'l Ins. Co.*, 2010 WL 5392735, at *9 (granting motion to stay based in part upon counsel's representation that defendant was a target of an ongoing criminal investigation). Carr has also been asked to meet

with the USAO in connection with the same insider trading allegations levied in Heartland's Complaint. *See* McGovern Decl. ¶¶ 5, 9. Furthermore, Carr has reason to believe that grand jury subpoenas have been issued to persons potentially in possession of information relevant to the USAO Investigation. *See id.* ¶ 10. And, critically, Carr has reason to believe that the grand jury served subpoenas on witnesses in November 2018 and that those witnesses provided their testimony before the grand jury in December 2018. *See id.* Moreover, Carr's counsel has been in contact with the USAO throughout its investigation of Carr, including as recently as March 2019. *See id.* ¶ 11. Accordingly, as the exposure to criminal liability is neither remote nor speculative, the portion of the case relating to insider trading should be stayed. *See Cont'l Ins. Co*, 2010 WL 5392735, at *9–10.

### 3. Plaintiff Would Not Be Prejudiced By A Partial Stay.

In determining whether a plaintiff will be prejudiced by entering a stay, courts weigh the plaintiff's "interest in proceeding expeditiously against any delay resulting from a stay." *LM Ins., Co.*, 2015 WL 4915677, at *2. Here, however, Plaintiff's interest in proceeding expeditiously with respect to its *Brophy* claim is minimal, and Plaintiff would not suffer any prejudice from an extension of the stay.

#### (a) Plaintiff has a weak interest in proceeding expeditiously given the amount-in-controversy.

Count One of the Complaint alleges that Carr breached his fiduciary duty to HPS because he supposedly engaged in insider trading. This claim, governed by Delaware law, is sometimes referred to as a Brophy claim. *See In re Oracle Corp.*, 867 A.2d 904, 934 (Del. Ch. 2004). Critically, as a matter of Delaware law, plaintiff's recovery in a successful *Brophy* is limited to disgorgement of the alleged profits of insider trading, and any actual suffered by the corporation, usually its costs in responding to any regulatory inquiry. *See Kahn v. Kolberg*

*Kravis Roberts & Co., L.P.*, 23 A.3d 831 (Del. 2011); *see also Pfeiffer v. Toll*, 989 A.2d 683, 700 (Del. Ch. 2010). Here, Heartland acknowledges that its *Brophy* claim is governed by Delaware law. Compl. ¶ 87. And, in accordance with settled Delaware law, Heartland only seeks disgorgement of "any illicit profits that Carr and Hanratty obtained," plus "all of the fees, costs and expenses it incurred as a result of Carr's [alleged] unlawful conduct." Compl ¶ 122–123.[4]

Seen in this context, Plaintiff has no colorable need to proceed expeditiously with respect to its *Brophy* claim. At bottom, all Heartland seeks are money damages—and money damages that, even assuming liability, which Mr. Carr contests have largely, if not entirely, already been satisfied. It is well-settled that where—as here—a plaintiff solely seeks money damages, and where—as here—there is no suggestion that the defendant would be unable to satisfy a money judgment, a plaintiff asserts "no injury that is particularly unique" that would weigh against staying the matter in light of parallel criminal proceedings. *Walsh*, 7 F. Supp. 2d at 528. *See also In re Herley Indus. Inc. Sec. Litig.*, No. 06-2596, 2007 WL 1120246, at *2 (E.D. Pa. Apr. 11, 2007) ("Plaintiffs have articulated no unique injury citing only continued monetary loss and the passage of time.").

Further, consideration of the modest amount-in-controversy under Count One only underscores that Global lacks any interest in proceeding expeditiously at the expense of Carr's constitutional rights:

- A generous reading of the Complaint suggests that Heartland's recovery in respect of its *Brophy* claim would be disgorgement of approximately $250,000—the amount of money allegedly made by Hanratty—plus any

---

[4] Specifically, Heartland requests "[t]hat the Court order Carr to pay HPS all fees, costs and expenses they incurred in addressing, investigating and responding to all subpoenas, regulatory investigations, court proceedings and other actions relating to Carr's insider trading and related conduct." Compl. at 46.

actual harm incurred by the corporation.[5] Plainly, this is not a material sum of money as far as Plaintiff is concerned, and its interest in proceeding in respect of this claim is weak, at best.[6]

- Another reading of the Complaint suggests that Heartland would be entitled only to disgorgement of approximately $42,268, plus actual damages.[7] Heartland simply cannot be said to have a valid interest in proceeding expeditiously in respect of a claim that may not independently satisfy the amount-in-controversy requirement of 28 U.S.C. § 1332(a).

Either way, Heartland—a company worth billions of dollars—cannot be said to have a colorable interest in proceeding expeditiously regarding the allegations of insider trading, given the amount in controversy under Count One. Indeed, any expected recovery by Heartland in respect of its *Brophy* claim will almost certainly be dwarfed by the legal fees incurred in litigating that very claim.

### (b) Hanratty and Carr's Settlements with the SEC Undermine Heartland's Interest in Promptly Litigating the *Brophy* Claim.

Heartland's putative interest in litigating Count One at this time is further undermined by the fact that Hanratty has already disgorged any allegedly ill-gotten gains from the relevant trading activity, and both Carr and Hanratty have paid—or will pay—significant civil penalties, collectively exceeding the alleged gains by a multiple. Critically, it is well-settled

---

[5] Plaintiff alleges that Hanratty purchased 11,393 shares of HPS stock, Compl. ¶ 39, allegedly buying it at $79.00 per share and allegedly selling it at $101.37 per share, *id.* ¶ 42. [6] Heartland's parent company's reported revenues were approximately $3.4 billion in 2018, and approximately $4.0 billion in 2017. *See* Global Payments Inc., Annual Report (Form 10-K) 30 (Feb. 21, 2019); Global Payments Inc., Annual Report (Form 10-K) 90 (Feb. 23, 2018).

[7] Indeed, the Complaint itself strongly implies that the alleged profits should be calculated as of December 11, 2015—the first trading day after news of the Global-Heartland merger broke. *See* Compl. ¶ 33; *cf. id.* ¶ 168 (alleging that "the fact that Global had offered to acquire [Heartland Payment Systems, Inc.], and the amount and timing of the offer" was not public before December 10, 2015).

Heartland Payment Systems Inc.'s stock closed on December 11, 2015 at $82.98 per share. Taking the Complaint's invitation to calculate Hanratty's alleged profits based on when the merger became known to the market, this would result in disgorgement in the amount of $42,268.

that the purpose of a *Brophy* claim is not principally to remedy harm to the corporation itself but "to prevent unjust enrichment based on the misuse of confidential corporate information." *In re Fitbit, Inc. Stockholder Deriv. Litig.*, 2019 WL 190933, at *4 n.26 (Del. Ch. Jan. 14, 2019). And here, Hanratty and Carr have already entered into settlements with the SEC that have completely vindicated that core interest.

In October 2018, Hanratty entered into a consent judgment with the SEC, whereby she agreed to pay disgorgement of $250,628, plus prejudgment interest of approximately $27,352. *See* Final Judgment as to Katherine Hanratty, *Securities and Exchange Comm'n v. Robert O. Carr*, 18-cv-1135 (D. Conn. Oct. 4, 2018), ECF No. 23. Hanratty also agreed to pay a separate civil penalty of $250,628. *Id.* Carr also recently agreed to settle the SEC Action, whereby Carr neither admitted nor denied the allegations against him, and agreed to pay a civil penalty of $250,628. *See* Consent Mot. to Approve Consent Judgment as to Robert Carr, *Securities and Exchange Comm'n v. Robert O. Carr*, 18-cv-1135 (D. Conn. Apr. 22, 2019), ECF No. 44. The United States District Court for the District of Connecticut has yet to approve the proposed settlement, but Carr has placed the full penalty amount in escrow and the funds will be automatically released to the SEC within fourteen days of the court's entry of judgment. *See* Proposed Judgment as to Robert Carr, *Securities and Exchange Comm'n v. Robert O. Carr*, 18-cv-1135 (D. Conn. Apr. 22, 2019), ECF No. 44-1. Between them, Carr and Hanratty have agreed to disgorge approximately $277,980 to the SEC—an amount that more than accounts for the alleged profits from Hanratty's trading and any disgorgement sought by Heartland in respect of its *Brophy* claim—and to separately pay over $500,000 in civil penalties – for a total of over $750,000 in disgorgement, penalties and interest.

In light of Hanratty and Carr's settlements, Heartland cannot seek disgorgement from either Carr or Hanratty, largely, if not entirely, eliminating their *Brophy* claim. "A given dollar can be disgorged only once," *Lee v. Pincus*, No. 8458-CB, 2014 WL 6066108, at *7 n.35 (Del. Ch. Nov. 14, 2014), and here, Hanratty has already disgorged the value of any ill-gotten gains to the SEC. Indeed, this Court has held in analogous contexts that plaintiffs "may not recover from defendants any profits already disgorged to the SEC in [a prior civil action]." *See Nat'l Westminster Banc. NJ v. Leone*, 702 F. Supp. 1132, 1140 (D.N.J. 1988); *see also Litton Indus. v. Lehman Bros. Kuhn Loeb Inc.*, 734 F. Supp. 1071, 1076 (S.D.N.Y. 1990) ("[O]nce ill-gotten gains have been disgorged to the SEC, there remains no unjust enrichment, and therefore, no basis for further disgorgement in a private action."); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 40 F. Supp.3d 332, 338 (S.D.N.Y. 2014) ("[A]ny damages Plaintiffs can collect . . . will be diminished by disgorgement from the [SEC settlement]."). Since disgorgement be unavailable, all that remains of Count One is Heartland's claim for "fees, costs, and expenses [ ] incurred in addressing, investigating, and responding to all subpoenas, regulatory investigations, court proceedings and other actions relating to Carr's [alleged] insider trading." Compl. at 46. Heartland has yet to disclose what—if any—actual damages it incurred as a consequence of Carr's alleged trading activity, but that amount almost certainly does not create a substantial interest in litigating the *Brophy* claim at the expense of Carr's constitutional rights.

### (c)    Plaintiff Will Not be Prejudiced by a Partial Stay During the Pendency of the USAO Investigation.

Additionally, there is no evidence to suggest that Plaintiff would be in any way burdened by extending the stay with respect to Count One. In fact, the opposite is true. Resolution of a parallel matter may very well "further the goal of discovery and promote efficiency," *Colombo v. Bd. of Educ. For the Clifton School Dist.*, No. 11-00785 (CCC), 2011

WL 5416058, at *6 (D.N.J. Nov. 4, 2011), by streamlining the issues presented. *See Maloney v. Gordon*, 328 F. Supp.2d 508, 513 (D. Del. 2004). As is the case here: staying the *Brophy* claim may actually help Plaintiff by streamlining and simplifying this litigation in the future. Extending the stay would leave "Plaintiff's case . . . no worse off than it is presently." *Peterson*, 2011 WL 5416571, at *4. Thus, "[t]he absence of prejudice to [Plaintiff] from a delay of the case . . . weighs in favor of a stay." *Walsh*, 7 F. Supp.2d at 528.

### 4. Carr May Be Severely Prejudiced By The Absence Of A Stay.

In stark contrast to the lack of prejudice that will fall upon Plaintiff should a stay of its *Brophy* claim be granted, Carr could be severely prejudiced if this case were to proceed while the USAO Investigation into the alleged insider trading activity is pending. *See, e.g., LM Ins. Corp.,* 2015 WL 4915677, at *2. As courts have long recognized, in the absence of a stay, defendants in Carr's position must choose between waiving their constitutionally protected rights against self-incrimination and fully defending the civil action:

> Defendants may be placed in the position of waiving their Fifth Amendment privilege in order to defend this matter, thereby suffering detrimental consequences in any criminal action. Oppositely, Defendants may be placed in the position of asserting their Fifth Amendment privilege in order to protect themselves in the criminal investigation, and thereby be subjected to adverse inferences in this matter.

*Cont'l Ins. Co.*, 2010 WL 5392735, at *10. For instance, if Carr were compelled to answer the Complaint's allegations of insider trading at this point in time, he would likely need to assert his Fifth Amendment right to avoid self-incrimination with respect to a significant portion of the 189 allegations in the Complaint. It is a virtual certainty that he would have to do so in response to Plaintiff's interrogatories, deposition questions, document requests, requests to admit, and other discovery requests that would conceivably implicate the insider trading allegations.

Additionally, although Carr has meritorious defenses with respect to Count One, there is a risk that he may be unable to litigate them without waiving his Fifth Amendment rights altogether. *Cf. Mitchell v. United States*, 526 U.S. 314, 321 (1999) ("[A] witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details."). Thus, if Carr were to plead affirmative defenses or to engage in discovery with respect to Count One, or the insider trading allegations more generally, he would run the risk of waiving his Fifth Amendment rights in these proceedings. However, if he asserts his Fifth Amendment rights in response to the Complaint, he may be subject to an adverse inference that exposes him to potential civil liability. In other words, Carr must decide whether to forgo meritorious defenses in this proceeding or else risk waiving his Fifth Amendment rights and thus risk subjecting himself to potential criminal liability.[8]

Accordingly, in light of the significant prejudice facing Carr, this factor weighs strongly in favor of extending the stay.

### 5. Staying The Insider Trading Portion Of The Case Would Serve The Interests Of The Court.

"The Court also has an interest in judicial efficiency in terms of managing its caseload." *Walsh*, 7 F. Supp. 2d at 528. Here, this factor also militates in favor of a stay. In the absence of a stay, the Parties are likely to burden this Court with repeat motion practice. For example, it can fairly be expected that the discovery process will be characterized by disputes concerning whether answering a question or providing a document would intrude upon Carr's

---

[8] Forcing Carr to litigate the *Brophy* claim could prejudice him in other ways too. Doing so would potentially expose Carr's defense strategy to the USAO, giving it an unfair tactical advantage in a criminal proceeding. *See De'Omilia Plastic Surgery, PC v. Sweeton*, No. 12-CV-06415-FLW, 2013 WL 6070037, at *2 (D.N.J. Nov. 18, 2013) (citing *SEC v. Dresser Indus.*, 628 F.2d 1368, 1376 (D.C. Cir. 1980)).

rights under the Fifth Amendment. The Parties are also likely to litigate what inferences can and cannot be drawn from the invocation of Carr's constitutionally safeguarded rights against self-incrimination. The Court's time and resources will thus be greatly conserved by granting a stay. *See id.*; *see also GEICO*, 2015 WL 5823025, at *7 ("Without a stay, interrogatory and deposition discovery would likely be disrupted and cause inefficiency, because Moving Defendants have indicated that they will assert Fifth Amendment privileges."). By contrast, if the stay is extended in part, the extent to which the Parties will occupy the Court's time, attention and resources will be limited. Extending the stay with regard to Heartland's *Brophy* claim, therefore, would promote judicial efficiency.

### 6. A Stay Will Benefit The Public.

The final factor to be considered is the public interest in a stay of proceedings. As with the other *Walsh* factors, this factor also weighs in favor of a partial stay here. Indeed, as the *Walsh* court aptly explained, staying a civil case in light of a parallel criminal investigation "would *benefit* the public by allowing the Government to conduct a complete, unimpeded investigation into potential criminal activity." 7 F. Supp. 2d at 529 (emphasis added). The same holds true here as well.[9]

And at the very least, Plaintiff can identify no harm whatsoever to the public that would follow from extending the stay as it relates to the insider trading allegations. Thus, this factor militates in favor of staying the *Brophy* claim.

---

[9] Equally important, extending the stay would be an economically efficient course of action with respect to the insider trading allegations. Again, Plaintiff seeks only disgorged profits and actual damages in Count One; it is a near certainty that the cost of litigation will greatly exceed the value of the relief sought. By contrast, resolution of the parallel proceedings may very well streamline these proceedings and reduce the burdens upon both parties. *See Maloney*, 328 F. Supp.2d at 513; *Colombo*, 2011 WL 5416058, at *6.

## V.    A PARTIAL STAY WILL ALLOW THE PARTIES TO PROCEED TO LITIGATE THE ALLEGED VIOLATIONS OF THE NON-COMPETE AND NON-SOLICITATION AGREEMENTS.

HPS originally proposed bifurcating these proceedings so that the insider trading allegations would remain stayed, and the parties would be free to litigate the breach of contract claim. *See* Jeffrey A. Carr Decl. ¶ 3.  Although Plaintiff has walked away from its prior bifurcation proposal without explanation, Carr agrees that bifurcation would be a just and efficient solution.  This Court undoubtedly has the authority to bifurcate this case. *See Teva Pharm. Indus., Ltd. v. Apotex, Inc.*, 2008 WL 3413862, at *10 (D.N.J. Aug. 8, 2008). *Cf.* Fed. R. Civ. P. 42(b).  That is precisely what should happen here:  Although Carr cannot effectively litigate Count One during the pendency of the USAO Investigation, Carr faces no such obstacle to litigating the majority of Count Three.

Count Three sets forth a single state-law breach-of-contract claim against Carr, based on three theories of liability:

- First, Plaintiff claims that Carr violated a confidentiality agreement with his former employer, by supposedly "by disclosing to Hanratty before December 10, 2015 information about Global's offer to acquire HPS, and by using that information to his and Hanratty's benefit." Compl. ¶ 174; *see also id.* ¶¶ 154-55, 161, 166–76, 185–86.

- Second, Plaintiff alleges that Carr violated a non-compete agreement by "engaging in activities to form and develop . . . a new company that directly competes with HPS." *Id.* ¶ 178.

- Third, Plaintiff avers that Carr violated a non-solicitation agreement that supposedly prohibited Carr from inducing "other employees of [HPS] to terminate their employment with the Company or engage in any Competing Business." *Id.* ¶ 183.

Plainly, the first theory of liability substantially overlaps with the USAO Investigation:  The allegations concerning the supposed violations of the confidentiality agreement are virtually coextensive with Count One and—as with Heartland's *Brophy* claim—Carr respectfully requests that the Court stay any litigation of those claims during the pendency of the USAO Investigation.

At the same, however, an appropriate confidentiality and bifurcation order and discovery plan would enable the parties to litigate the alleged violations of the non-solicitation and non-compete agreements at this time. Indeed, this modest approach (which, again, was originally proposed by Heartland) would simply defer litigation of Count One and the insider trading allegations more generally until the conclusion of the USAO Investigation. Such an approach would allow the parties to litigate those aspects of the case that do not risk exposing Carr to criminal liability or undermining his constitutional rights—which is most, if not all, of what remains of the case at this point—and, as such, would advance the interests of justice.

## VI.    CONCLUSION

For the foregoing reasons, Carr respectfully requests that this Court partially extend the stay of the instant proceedings by ordering that Count One, and Plainitff's insider trading-related allegations more generally, be stayed during the pendency of the USAO Investigation, and ordering the parties to submit a confidentiality and bifurcation order and discovery plan so that Count Three may be appropriately litigated.

DATED:  May 9, 2019                                  Respectfully submitted,


s/ Jeffrey A. Carr
Jeffrey A. Carr
Matthew V. DelDuca
PEPPER HAMILTON LLP
301 Carnegie Center, Suite 400
Princeton, NJ 08543-5276
(609) 452-0808
carrj@pepperlaw.com

Peter L. Welsh
Daniel N. Swartz
J.  William Piereson
ROPES & GRAY LLP
800 Boylston Street
Boston, MA 02199-3600
(617) 951-7000
peter.welsh@ropesgray.com
daniel.swartz@ropesgray.com
will.piereson@ropesgray.com

*Attorneys for Defendant Robert O. Carr*