**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| _____ | : | |
| HEARTLAND PAYMENT SYSTEMS, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Case No. 3:18-cv-09764-BRM-DEA |
| | : | |
| ROBERT O. CARR and KATHIE HANRATTY, | : | |
| | : | **OPINION** |
| Defendants. | : | |
| _____ | : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Dismiss filed by Plaintiff Heartland Payment Systems, LLC's ("Heartland") seeking to dismiss Defendant Robert O. Carr's ("Carr") Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). (ECF No. 174.) Carr opposed Heartland's Motion to Dismiss (ECF No. 179). Heartland filed a Reply. (ECF No. 180.) Having reviewed the submissions filed in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, Heartland's Motion to Dismiss is **GRANTED in part** and **DENIED in part**. Carr is **GRANTED** leave to amend.

### I. BACKGROUND

For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Counterclaim (ECF No. 160) as true and draws all inferences in the light most favorable to

Plaintiff.[1] *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Furthermore, the Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).[2]

From October 2000 to April 2016, Carr served as Heartland's CEO and Chairman of Board of Directors. (ECF No. 160 at 2, ¶ 1.) In April 2016, Global Payments, Inc. ("Global") acquired Heartland through a merger. (*Id*. at 54, ¶ 10.) This makes Heartland a payment processing company wholly owned and controlled by Global, a payment processing and technology company. (*Id*. at 59, ¶¶ 29–30.) Upon completion of the merger, Carr departed from Heartland. (*Id*. at 64, ¶ 54.) Upon his departure, Carr was subject to three restrictive covenants with Heartland: a one-year non-compete agreement, which expired on May 1, 2017; a one-year non-solicitation of merchants and suppliers, which expired on May 1, 2017; and a two-year non-solicitation of Heartland employees, which expired on May 1, 2018. (*Id*. at 64, ¶ 55.) On May 1, 2017, Carr announced his new company Above & Beyond – Business Tools & Services for Entrepreneurs, Inc. ("Beyond"). (*Id*. at 55, ¶ 12.) As a "facilitator" company, Beyond contracts with third-party processors to provide business tools, including payment processing services, to Beyond's customers. (*Id*. at 59, ¶ 28.)

Carr alleges Heartland has undertaken a coordinated campaign of disinformation to (1) discredit and disparage both Carr and Beyond, (2) undermine Beyond's existing and prospective customer and supplier relationships, and (3) harass and threaten Heartland's employees and others who were interested in joining or working with Beyond. (*Id*. at 66, ¶ 64.) Specifically, Carr claims

---

[1] Except for the injury-in-fact inquiry in determining whether Carr has standing to sue Heartland, as explained in Part III.A.2, *infra*.

[2] Because the Court writes for the parties, it recites only those facts and the procedural history necessary to rule on this Motion to Dismiss. For additional facts of this matter, see this Court's Opinions on February 27, 2019 (ECF No. 42) and January 27, 2020 (ECF No. 136).

Heartland has been: attacking Carr personally to damage his personal brand (*id*. at 56, ¶ 17); harassing Heartland's former employees who join Heartland, by pressuring them return to Heartland through a series of litigations and litigation threats (*id*. at 74, ¶ 99); sending Heartland's former employees text messages and emails even after being asked to stop (*id*. at 56, ¶ 19); withholding residual commission payments to the former employees unless they agree to provide information about Beyond or rejoin Heartland (*id*.); spreading misinformation about Beyond to Carr's current and potential clients (*id*. at 57, ¶ 20); pressuring Carr's business partners and associates to distance themselves from and break off business relationships with Carr and Beyond (*id*. at 68, ¶ 75). Carr also alleges specific instances of Heartland's wrongdoings: Global and Heartland instructed their tentative merger partner Total System Services ("TSYS") to drop a multi-million dollar transaction with Beyond, which TSYS did on the day after the TSYS/Global merger was announced (*id*. at 57, ¶ 22); at the annual leadership summit organized by the Women's Network in Electronic Transactions ("WNET") in 2018, multiple Global and Heartland employees pressured WNET to pull Carr from the speaking panel (*id*. at 68, ¶ 77); Global and Heartland, during Carr's non-compete period with Heartland, encouraged and acquiesced Carr's efforts to acquire TransNational Payments ("TransNational") and Cantaloupe Systems ("Cantaloupe"), which Heartland later claimed to violate Carr's restrictive covenants (*id*. at 77–79, ¶¶ 118–27).

On May 18, 2020, Carr filed a Counterclaim against Heartland, asserting claims for tortious interference with prospective economic advantage (Count I) and unfair competition (Count II). (ECF No. 160.) On June 22, 2020, Heartland filed a Motion to Dismiss Carr's Counterclaim. (ECF No. 174.) On July 20, 2020, Carr opposed Heartland's Motion to Dismiss (ECF No. 179). On July 27, 2020, Heartland filed a Reply. (ECF No. 180.)

## II.    LEGAL STANDARD

A. **Rule 12(b)(1)**

"A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack does not dispute "the facts alleged in the complaint," and "requires the court to 'consider the allegations of the complaint as true.'" *Id.* (citing *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). A factual attack disputes "the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Id.* (citing *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). "When a factual challenge is made, 'the plaintiff will have the burden of proof that jurisdiction does in fact exist,' and the court 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case,'" and "no presumptive truthfulness attaches to [the] plaintiff's allegations." *Id.* (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). The submission of "a signed declaration" or "a sworn statement of facts" disputing the non-movant's factual allegations constitutes "a factual challenge to subject matter jurisdiction." *Id.* (citing *Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines, Inc.*, 673 F.2d 700, 711 (3d Cir. 1982)).

"[A] district court must take care not to reach the merits of a case when deciding a Rule 12(b)(1) motion." *Id.* at 348 (citing *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008)). "Jurisdictional finding of genuinely disputed facts is inappropriate when the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action." *Id.* (citing *Sun Valley Gasoline, Inc. v. Ernst Enters, Inc.*, 711 F.2d 138, 139 (9th Cir. 1983)). "[W]hen a factual challenge to jurisdiction attacks facts at the core of the merits of the underlying cause of action, 'the proper procedure for the district court is to find that jurisdiction exists and to deal with the objection as a direct attack

on the merits of the plaintiff's case.'" *Id.* (citing *Kulick v. Pocono Downs Racing Ass'n*, 816 F.2d 895, 898 n.5 (3d Cir. 1987)).

### B.      Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286 (citations omitted). Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing *Papasan*, 478 U.S. at 286).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it

5

must include "further factual enhancement" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286 (citations omitted).

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss to a summary judgment motion, including items that are *integral to or explicitly relied upon* in the complaint." *Coulter v. Doerr*, 486 F. App'x 227, 228 (3d Cir. 2012) (citing *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999)).

### C.    Rule 15(a)

"[A] court should freely give a party leave to amend its pleadings "when justice so requires." *Kelly v. Borough of Union Beach*, No. 10-4124, 2011 U.S. Dist. LEXIS 12839, at *21 (D.N.J. Feb. 8, 2011) (citing Fed. R. Civ. P. 15(a)). "Granting leave to amend is within the Court's discretion and is generally favored unless there is: 1) undue delay or prejudice, 2) bad faith, 3) dilatory motive, 4) failure to cure deficiencies through previous amendment, or 5) futility." *In re Certain Consol.*

*Roflumilast Cases*, No. 15-3375, 2017 U.S. Dist. LEXIS 141102, at *9 (D.N.J. Aug. 31, 2017) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)). "A motion to amend is futile if the plaintiff's claims are time-barred," or are "frivolous or advance[] a claim or defense that is legally insufficient on its face." *Kelly*, 2011 U.S. Dist. LEXIS 12839, at *22 (citations omitted). "[C]ourts place a heavy burden on opponents who wish to declare a proposed amendment futile." *Witherspoon v. Rent-A-Center, Inc.*, 173 F. Supp. 2d 239, 243 (D.N.J. 2001). "[T]he trial court may properly deny leave to amend where the amendment would not withstand a motion to dismiss." *Id.* (citing *Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983)); *see also Certain Consol. Roflumilast*, 2017 U.S. Dist. LEXIS 141102, at *9 (citing *In re NAHC, Inc. Sec. Litig.*, 306 F. 3d 1314, 1332 (3d Cir. 2002)) ("When considering whether a proposed amendment is futile, the Court applies essentially the same standard as a Rule 12(b)(6) motion to dismiss; that is, where the complaint, as amended, would fail to state a claim upon which relief could be granted.").

III.    **DECISION**

   A.    **Carr Has Standing to Sue Heartland**

      1.    **Heartland May Pursue a Factual Attack on the Injury-in-Fact Element But Not the Causation Element**

Heartland argues Carr has no standing to sue for Heartland's alleged harassment and business interference directed to Beyond or Beyond's employees, because there has been no direct personal loss sustained by Carr and, under the derivative injury rule, Carr lacks standing to pursue a counterclaim alleging harm to Beyond, Beyond's employees, or any other third party. (ECF No. 174-1 at 17.) Heartland contends Carr also lacks standing to sue for the alleged economic harm to Carr's personal brand, because there is no causal connection and such injuries are not fairly traceable to Heartland's alleged conducts, and the cause of Carr's tarnished reputation was Carr's

own behaviors. (*Id*. at 19.) Heartland claims it may launch a factual attack on Carr's standing, because the facts upon which Carr bases his Counterclaim have already been controverted by Heartland's sworn statements of fact and in collateral The U.S. Securities and Exchange Commission ("SEC") enforcement proceedings. (ECF No. 180 at 9–10.) Carr counters Heartland's Motion to Dismiss under Rule 12(b)(1) constitutes an improper factual attack on the merits of the Counterclaim, because the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of Carr's action. (ECF No. 179 at 13–14.) Carr argues it should not be required to present evidence establishing its actual injury, which is a central question of success on the merits, at the pleading stage. (*Id*. at 14.) Carr maintains Heartland wrongly insists on the more expansive Rule 12(b)(1) factual standard in order to introduce facts outside the four corners of the Counterclaim. (*Id*. at 15.) Carr states, unless and until Heartland answers the Counterclaim, Heartland is precluded from asserting any factual attack on Carr's standing under Rule 12(b)(1). (*Id*. at 12.) The Court finds Heartland may pursue a factual attack on the injury-in-fact element but not the causation element of standing.

"Standing is a jurisdictional matter." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). "Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." *Id*. (citing *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006)). The "constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The first element is injury-in-fact: "the plaintiff must have suffered an injury-in-fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id*. (citations and internal quotations omitted). The second element is

8

causation: "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant." *Id.* (citations and internal quotations omitted). The third element is redressability: "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (citations and internal quotations omitted). Here, Heartland's Rule 12(b)(1) challenge touches on the injury-in-fact element (concerning whether Carr suffered an injury-in-fact) and the causation element (concerning whether Carr's alleged injury was caused by Heartland) of the standing requirement.

Though "a district court must take care not to reach the merits of a case when deciding a Rule 12(b)(1) motion," "[t]he standing requirement is analytically distinct from the merits of the underlying dispute." *Davis*, 824 F.3d at 348 (citations omitted). The submission of "a signed declaration" or "a sworn statement of facts" disputing the non-movant's factual allegations constitutes "a factual challenge to subject matter jurisdiction." *Id.* at 346 (citing *Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines, Inc.*, 673 F.2d 700, 711 (3d Cir. 1982)). Here, Heartland submitted two signed declarations (ECF Nos. 174-2, 180-1) disputing Carr's standing. This enables Heartland to pursue a factual attack on Carr's standing.

But not all the elements of standing are subject to a Rule 12(b)(1) challenge. "[W]hether a plaintiff has alleged facts that plausibly support a causal connection between the plaintiff's injury-in-fact and the defendant's conduct" is "a question of causation" and reaches the merits of a case. *Id.* at 347 n.16. In contrast, the court may "treat the Rule 12(b)(1) motion as a factual attack" on standing if the basis of the attack is that the non-movant has no injury-in-fact. *Charlton v. Comm'r*, 611 F. App'x 91, 94 (3d Cir. 2015). Accordingly, Heartland may pursue a factual attack only on the injury-in-fact element. As for the causation element, Heartland may only launch a facial attack, which "is considered under the same standard as a motion under Rule 12(b)(6)." *Willekes v.*

*Serengeti Trading Co.*, 783 F. App'x. 179, 183 (3d Cir. 2019).

> **2.      Carr Has Demonstrated an Injury-in-Fact in His Reputation and Personal Brand**

Carr maintains his factual allegations include actions by Heartland that harmed Carr directly, which could not be considered as derivative injuries. (ECF No. 179 at 19.) Carr emphasizes the derivative injury rule does not rule out the possibility that a shareholder may suffer direct injury associated with actions directed primarily at the corporate entity. (*Id*. at 21.) Carr states Heartland publicly targeted his reputation and specifically harmed his ability to compete in the marketplace, the influence of which extended beyond his role as Beyond's CEO or shareholder. (*Id*. at 22, 24.) For instance, Carr alleges a list of disparaging comments made by Heartland: Carr was in jail; Carr lied to an employee; Carr stepped down as the owner of a company for nefarious reasons; Carr was not a good person; Beyond's employees were lied to or screwed by Carr. (*Id*. at 24.) Carr also alleges Heartland pressured Carr's business partners and associates to distance themselves from and break off business relationships with Carr, and intentionally interfered with Carr's scheduled appearance as a panelist at the WNET summit. (*Id*.) Carr argues the above alleged actions of Heartland caused injuries specific to Carr, including the loss of (1) beneficial relationships with clients, business partners, and vendors, and (2) economic advantages attributable to his reputation and personal brand, such as book sales, speaking engagements, appearances. (*Id*. at 25.) Heartland counters Carr's allegations of injury are vague and conclusory. (ECF No. 174-1 at 22.) Heartland contends Carr has not alleged any loss of specific contracts, business expectations, and fees for paid speaking engagements or public appearances resulting from Heartland's interference. (ECF No. 180 at 12–13.) As for the incident at the WNET summit, Heartland argues Carr only alleges Heartland demanded Carr be pulled from a speaking panel, not Carr was actually removed from the panel or suffered any kind of economic harm as a result. (*Id*.

at 13 n.4.) Heartland concludes Carr fails to allege any financial harm or intangible harm associated with statutory violations by Heartland, which calls for dismissal of the Counterclaim. (*Id*. at 15.) The Court disagrees.

"At the pleading stage, a plaintiff can satisfy the injury-in-fact requirement by alleging facts that 'demonstrate a realistic danger of [the plaintiff's] sustaining a direct injury.'" *Bristol-Myers Squibb Co. v. Shalala*, 91 F.3d 1493, 1497 (D.C. Cir. 1996) (citing *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 60 L. Ed. 2d 895, 99 S. Ct. 2301 (1979)); *see also Pub. Citizen, Inc. v. Trump*, 435 F. Supp. 3d 144, 155 (D.D.C. 2019) (citations omitted) ("The risk of future injury can, at times, support a party's standing to sue."). "[G]eneral factual allegations of injury resulting from the defendant's conduct may suffice" to establish standing, "for on a motion to dismiss [the court] presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *see also Smith v. Nissan Motor Acceptance Corp.*, 2020 U.S. Dist. LEXIS 202206, at *9 (N.D. Ga. Jan. 3, 2020) (finding the plaintiff "has alleged a sufficiently concrete injury to assert standing," though the plaintiff "has failed to show any specific transaction that has been impacted by" the defendant's actions). Also, "economic injury is not the only kind of injury that can support a plaintiff's standing." *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 262–63 (1977). "The Supreme Court has long recognized that an injury to reputation will satisfy the injury element of standing." *Gully v. NCUA Bd.*, 341 F.3d 155, 161 (2d Cir. 2003) (citations omitted); *see also McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders of the Judicial Conf. of the United States*, 264 F.3d 52, 57 (D.C. Cir. 2001) ("[I]njury to reputation can nonetheless suffice for purposes of constitutional standing."); *Riggs v. Albuquerque*, 916 F.2d 582, 585–86 (10th Cir. 1990) (concluding the plaintiffs, by "alleg[ing] harm to their personal, political, and

professional reputations in the community," "have alleged a cognizable, continuing injury" to establish standing).

Therefore, Carr need not point to a specific transaction, opportunity, or relationship allegedly impacted by Heartland's actions, since general factual allegations of injury are sufficient. Also, "[t]he derivative injury rule . . . will not bar" Carr's claims based on the injuries of his reputation and personal brand (ECF No. 160 at 80, ¶ 130.vii), which "were inflicted on him individually rather than on the corporation." *In re Kaplan*, 143 F.3d 807, 821 (3d Cir. 1998) (citations omitted). Accordingly, the Court finds Carr has sufficiently alleged his injuries resulting from some of Heartland's actions, but the other alleged actions of Heartland do not result in an actionable injury by Carr.

The following alleged conducts of Heartland present a "realistic danger" of injuries direct and personal to Carr. *See Bristol-Myers Squibb Co. v. Shalala*, 91 F.3d 1493, 1497 (D.C. Cir. 1996). First, Heartland's demand allegedly made at the WNET summit to remove Carr from the speaking panel—which Heartland does not deny—may deter future event organizers from inviting Carr to speak or attend, thereby risking Carr's opportunities to be paid for future speaking engagements or public appearances. Such a risk exists whether or not WNET actually removed Carr from the panel. Second, Heartland's alleged disparaging comments present a realistic danger of injuries to his personal reputation, which could support a claim for interference with prospective economic advantage. *See NVR, Inc. v. Davern*, No. 15-5059, 2016 U.S. Dist. LEXIS 164983, at *11 (D.N.J. Nov. 29, 2016) (denying a motion to dismiss a tortious interference counterclaim which alleges diminished reputation of the defendant caused by the plaintiff's tortious conduct); *Knierim v. Siemens Corp.*, No. 06-4935, 2008 U.S. Dist. LEXIS 26571, at *49 (D.N.J. March 31, 2008) ("[A]ttempting to besmirch another's reputation and advise a prospective employer to not

hire a job candidate could possibly amount to intentional interference with prospective employment."). Moreover, the alleged disparaging comments targeted Carr personally and publicly (ECF No. 160 at 66–67, ¶¶ 65–68), and may deter other individuals and entities in the business community from developing beneficial relationships with Carr (as opposed to Beyond), thereby interfering with Carr's prospective economic advantage from such relationships.

On the contrary, the other alleged conducts of Heartland do not impose the risk of an injury-in-fact that affords Carr standing. Carr explains he is not suing for the injuries sustained by Beyond. (ECF No. 179 at 25.) This is in accordance with the derivative injury rule, which "holds that a shareholder (even a shareholder in a closely-held corporation) may not sue for personal injuries that result directly from injuries to the corporation." *Kaplan*, 143 F.3d at 811–12 (citations omitted); *see also In re Ressler*, 597 F. App'x 131, 135 (3d Cir. 2015) ("To have standing to sue individually, the shareholder must allege a direct, personal injury—that is independent of any injury to the corporation and the shareholder must be entitled to receive the benefit of any recovery."); *Meade v. Kiddie Acad. Domestic Franchising, LLC*, 501 F. App'x 106, 108 (3d Cir. 2012) ("[A]bsent a direct individual injury, the president and principal shareholder of a corporation lacks standing to sue for an injury to the corporation."). However, the following conducts of Heartland and damages alleged in Count I and Count II do not present a realistic danger of direct and personal injury to Carr. First, Heartland's intimidations of Carr's associates and co-workers who previously worked for Heartland (ECF No. 160 at 79–80, ¶ 130.i) are not aimed at Carr.[3] Second, Heartland's (1)

---

[3] The alleged intimidations include Heartland's campaign of litigation against Beyond's employees based on the employees' breach of restrictive covenants with Heartland. (ECF No. 160 at 80, ¶ 130.i.c.) As a result, though the parties dispute whether absolute litigation privilege bars Carr from suing Heartland for the above litigations (ECF No. 174-1 at 24; ECF No. 179 at 35; ECF No. 180 at 19), the Court need not consider this issue. After all, Carr's claims cannot be based on these litigations, which do not present a risk of injury-in-fact that affords Carr standing.

false statements that interfered with Beyond's employees' pursuit of prospective customers (*id.* at 80, ¶ 130.ii–iii), (2) threat to terminate contracts with customers and partners if they did not cease doing business with Beyond (*id.* at 80, ¶ 130.iv), (3) disruption of Beyond's acquisition deal with TSYS (*id.* at 80, ¶ 130.v), and (4) false statement that Heartland/Global owned or controlled Beyond due to Global's acquisition of TSYS (*id.* at 80, ¶ 130.vi) might injure Beyond, but not Carr directly and personally. Third, the damages in the instant action irrelevant to Carr's claims, which may destroy Carr's investment in Beyond and competition with Heartland (*id.* at 80, ¶ 130.viii), are essentially damages to Beyond's business, not Carr's personal injuries. Fourth, the damages in the instant action irrelevant to Carr's claims, which may burden Carr with legal fees (*id.*), are not the type of injury that can accord standing. *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1619 (2020) (citations omitted) ("[I]nterest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim."); *Diamond v. Charles*, 476 U.S. 54, 70–71 (1986) (holding an interest in legal fees is insufficient for standing purposes). Under the derivative injury rule, Carr has no standing to sue Heartland based on the above factual allegations.

In conclusion, the Court finds the Counterclaim survives a factual attack on the injury-in-fact element of standing. But Carr may only sue for the injuries inflicted upon Carr's reputation and personal brand resulting from some of the alleged actions of Heartland.

### 3.      Carr Survives a Facial Attack on the Causation Element

Heartland insists it played no part in Carr's reputational damages, and the reputational damages were solely caused by Carr's own misconducts which have been the subject of various governmental investigations, enforcement actions, and media coverage. (ECF No. 171-4 at 20–21.) Heartland maintains Carr fails to rebut or even acknowledge the facts contained in the Feinberg

14

Declaration that demonstrates any reputational harm to Carr is self-inflicted. (ECF No. 180 at 11.) Carr argues whether and to what extent Carr's injuries were caused by Heartland or self-inflicted is a fact-sensitive issue that cannot be adjudicated on a motion to dismiss, and can only be decided after the factual record is developed. (ECF No. 179 at 19.) The Court agrees.

At this stage, Heartland has, at most, demonstrated some of the reputational damages to Carr may be self-inflicted. The Court does not discern any basis to conclude Heartland played absolutely no part in Carr's reputational damages, in light of the multiple disparaging comments allegedly made by Heartland that targeted Carr personally and publicly. Drawing all inferences in the light most favorable to Carr, the Court finds the Counterclaim survives a facial attack on the causation element of standing.

Accordingly, Carr has standing to sue Heartland based on the alleged injuries inflicted upon Carr's reputation and personal brand.

### B.     Carr Has a Viable Claim for Tortious Interference with Prospective Economic Advantage

Heartland maintains Carr's assertions of reputational harm are vague and conclusory, without referring to the loss of any specific economic opportunities, economic harm or prospective contracts allegedly caused by Heartland. (ECF No. 174-1 at 21–22.) Heartland argues, because the Counterclaim is devoid of any well-pled factual allegations of how any prospective economic advantages were lost or his personal brand was economically harmed, Carr fails to state a claim. (*Id*. at 23.) Carr counters a claim for tortious interference can be predicated on allegations of reputational harm of a material or pecuniary nature, or an interference with one's calling or occupation. (ECF No. 179 at 28.) Carr maintains there is no requirement at the pleading stage to allege a specific contract or contractual opportunity that was specifically interfered with. (*Id*. at 29.) The Court agrees.

To establish a state law claim for tortious interference with prospective economic advantage, "Plaintiff must plead that: (1) it had a reasonable expectation of an economic benefit; (2) Defendant's knowledge of that expectancy; (3) Defendant's wrongful, intentional interference with that expectancy; (4) the reasonable probability that the claimant would have received the anticipated economic benefit, but for Defendant's interference; and (5) damages resulting from the defendant's interference." *Church & Dwight Co. v. SPD Swiss Precision Diagnostics*, No. 10-453, 2010 U.S. Dist. LEXIS 133114, at *7 (D.N.J. Dec. 16, 2010) (citing *Fineman v. Armstrong World Industries, Inc.*, 980 F.2d 171, 186 (3d Cir. 1992)). At the pleading stage, "a plaintiff does not need to allege specific prospective customers or contracts to show a reasonable expectation of prospective economic benefit." *Id.* at *11 (citations omitted); *see also 8600 Landis, LLC v. City of Sea Isle City*, No. 17-2234, 2018 U.S. Dist. LEXIS 50003, at *16 (D.N.J. March 27, 2018) ("The Court is not aware of any requirement under New Jersey law that liability for tortious interference with prospective economic advantage requires specific knowledge of a specific contract alleged to have been disrupted by a defendant's actions."); *Intervet, Inc. v. Mileutis*, Ltd., No. 15-1371, 2016 U.S. Dist. LEXIS 22165, at *24 (D.N.J. Feb. 24, 2016) (citation omitted) (finding "under the liberal notice pleading standard of Federal Rule of Civil Procedure 8(a), it is not required to identify specific lost customers or contracts" at the pleading stage for the defendant's counterclaim for tortious interference with prospective economic advantage); *Teva Pharm. Indus. v. Apotex, Inc.*, No. 07-5514, 2008 U.S. Dist. LEXIS 60418, at *28 (D.N.J. Aug. 7, 2008) (concluding "Rule 8(a) does not require a party to identify a specific prospective customer or contract" in asserting a claim for tortious interference with prospective economic advantage). [4] "[R]ather than alleging the

---

[4] The Court is aware of some earlier New Jersey cases that impose a higher standard of specificity at the pleading stage for a tortious interference claim. *See, e.g., Engineered Framing Sys. v. Vescom Structures, Inc.*, No. 05-CV-1461, 2005 U.S. Dist. LEXIS 26295, at *14 (D.N.J. Nov. 1, 2005)

existence of a contractual relationship, Plaintiff must instead allege facts giving rise to some reasonable expectation of economic advantage." *Church & Dwight*, 2010 U.S. Dist. LEXIS 133114, at *13. "[M]ere hope that the plaintiff would have entered into some future arraignment with the prospective customer is not sufficient." *Mu Sigma, Inc. v. Affine, Inc.*, No. 12-1323, 2013 U.S. Dist. LEXIS 99538, at *10–11 (D.N.J. July 16, 2013) (citations omitted).

Here, Heartland's Rule 12(b)(6) challenge focuses on Carr's factual allegation of prospective economic advantages. Contrary to Heartland's argument, Carr need not allege a specific transaction or opportunity adversely affected by Heartland at this stage. Instead, drawing all inferences in the light most favorable to Carr, the Court finds Carr has sufficiently alleged facts giving rise to a reasonable expectation of economic advantages and a reasonable probability that Carr would have received such advantages but for Heartland's alleged interference. First, Heartland's alleged demand that Carr be removed from the speaking panel at the WNET summit leads to a reasonable probability that future event organizers (especially those for future WNET events) are deterred from inviting Carr to speak or attend, thereby interfering with Carr's prospective economic advantage from paid speaking engagements or public appearances. Second, Carr specifically alleges the positive personal reputations he accumulated over the years in the business community. (ECF No. 160 at 53, ¶ 4.) Carr also alleges he personally was invited by

---

(dismissing the plaintiff's claims of tortious interference with prospective economic advantage because the plaintiff "fails to identify any specific prospective economic advantage that was disrupted"); *Lucas Indus. v. Kendiesel*, No. 93-4480, 1995 U.S. Dist. LEXIS 7979, at *26 (D.N.J. June 9, 1995) (dismissing the plaintiff's claims of tortious interference with prospective economic advantage because the plaintiff "failed to identify a single customer or a single contract that it was likely to consummate, but failed to consummate, due to the actions taken by" the defendant). However, "although earlier cases in this district required plaintiffs to plead with sufficient specificity the prospective economic advantage with which a defendant allegedly interfered, recent cases have not required such specificity." *Slim CD, Inc. v. Heartland Payment Sys.*, No. 06-2256, 2007 U.S. Dist. LEXIS 62536, at *11 (D.N.J. Aug. 22, 2007). Here, the Court follows the recent cases that no longer require such specificity.

colleges to deliver commencement speeches, was well-known to several specific media outlets, and authored published works in the payment processing industry. (*Id*. at 53, ¶ 5.) Therefore, it is reasonably probable that Heartland's alleged disparaging comments that target Carr personally and publicly would discourage other individuals and entities in the business community from developing beneficial relationships with Carr (as opposed to Beyond), thereby interfering with Carr's prospective economic advantage from such relationships. In conclusion, Carr's claim for tortious interference with prospective economic advantage (Count I) is viable. Heardland's Motion to Dismiss as to Count I is denied to the extent it is based on the alleged injuries inflicted upon Carr's reputation and personal brand (ECF No. 160 at 80, ¶ 130.vii), but is otherwise granted.

## C. Carr's Unfair Competition Claim Is Not Viable

Heartland argues Carr's tortious interference claim subsumes Carr's unfair competition claim, which is not a distinct cause of action under New Jersey law. (ECF No. 174-1 at 12.) Heartland explains, since the facts alleged for both claims are the same, and there is no substantive legal difference between the two claims, the unfair competition claim should be dismissed in favor of the tortious interference claim. (*Id*.) Carr counters he has adequately pled a claim for unfair competition claim, which is independent of his tortious interference claim. (ECF No. 179 at 31–32.) Carr insists the factual bases for the two claims are not identical. (*Id*. at 35.) Carr points out part of Heartland's alleged actions that constitute unfair competition include (1) encouraging Carr's deal with TransNational and misleading him as to the scope of Carr's restrictive covenants (ECF No. 160 at 82, ¶ 142), and (2) limiting the pool of potential candidates that Carr could hire (*Id*. at 81, ¶ 138), neither of which are allegations set forth in the tortious interference claim (ECF No. 179 at 35). In response, Heartland contends the above allegations only summarize what is already pleaded in Carr's tortious interference claim, and contain nothing unique to the unfair

competition claim. (ECF No. 180 at 17.) Heartland maintains it is not involved the alleged conducts concerning Carr's deal with TransNational, which were done by Global. (*Id*. at 17–18.) Heartland submits the Declaration of Susan Crowley to demonstrate the alleged statements made by Global concerning Carr's deal with TransNational do not constitute evidence of unfair competition by Heartland. (*Id*. at 18.) Heartland states the allegation concerning Carr's hiring is immaterial under the derivative injury rule, because it is Carr's company that does the hiring. (*Id*.) The Court finds Carr's unfair competition claim is duplicative of his tortious interference claim and should be dismissed.

"The common law tort of unfair competition has historically been viewed as an umbrella for tortious interference claims." *Nat'l Auto Div., LLC v. Collector's Alliance, Inc.*, 2017 N.J. Super. Unpub. LEXIS 234, at *11 (App. Div. Jan. 31, 2017) (citing Restatement (Third) of Unfair Competition § 1 cmt. g (1995)). "[U]nder New Jersey law, '[t]here is no distinct cause of action for unfair competition,'" which is "a general rubric which subsumes various other causes of action." *Diversified Indus., Inc. v. Vinyl Trends, Inc.*, No. 13-6194, 2014 U.S. Dist. LEXIS 61131, at *20 (D.N.J. May 1, 2014) (citing *C.R. Bard, Inc. v. Wordtronics Corp.*, 235 N.J. Super. 168, 561 A.2d 694, 696 (N.J. Super. Ct. Ch. Div. 1989)). "Accordingly, courts have dismissed unfair competition claims where they are duplicative of claims for tortious interference." *Id*. (citations omitted). "In New Jersey, unfair competition is commonly invoked for claims similar to misappropriation of trade secrets or commercial identity," and it "protects more information than a traditional trade secret claim." *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 386–87 (3d Cir. 2016) (citing *Torsiello v. Strobeck*, 955 F. Supp. 2d 300, 314 (D.N.J. 2013)); *see also Sussex Commons Outlets, L.L.C. v. Chelsea Prop. Group, Inc.*, 2010 N.J. Super. Unpub. LEXIS 2342, at *25 (App. Div. 2010) (citations and internal quotations omitted) ("New Jersey courts have noted that, in essence,

unfair competition is a business tort, generally consisting of the misappropriation of a business's property by another business. The misappropriation usually takes the form of the palming off or passing off of another's goods as one's own."). "Outside of the intellectual property context, unfair competition is not an independent cause of action." *Nat'l Auto Div.*, 2017 N.J. Super. Unpub. LEXIS 234, at *11 (citing *Columbia Broad. Sys. v. Melody Recordings, Inc.*, 134 N.J. Super. 368, 341 A.2d 348 (App. Div. 1975)).

Here, Carr does not allege facts that support an independent unfair competition claim. First, limiting the pool of potential candidates that Carr could hire, as discussed in Part III.A.2, *supra*, does not involve a direct and personal injury to Carr. Carr is hiring for his company, not himself; it is the company that could be directly injured by a limitation on hiring. That is to say, Carr's claim is barred by the derivative injury rule. Second, Carr has not shown Heartland's alleged encouragement of Carr's deal with TransNational and misleading Carr as to the scope of his restrictive covenants involve any element of intellectual property. In other words, Carr does not have an independent unfair competition claim.

Carr cites several cases to indicate an unfair competition claim can coexist with a tortious interference claim. (ECF No. 179 at 33–34.) But these cases either involve an alleged misappropriation of intellectual property, *LoanDepot.com v. CrossCountry Mortg., Inc.*, 399 F. Supp. 3d 226, 238 (D.N.J. 2019) (The plaintiff asserted "a claim against all defendants for unfair competition" based on their misappropriation of the plaintiff's various types of intellectual property.); *Strategic Prods. & Servs., LLC v. Integrated Media Techs., Inc.*, No. 18-00694, 2019 U.S. Dist. LEXIS 79319, at *31–32 (D.N.J. May 10, 2019) (finding the plaintiff's allegation that the defendant "actively encouraged and even rewarded former [plaintiff company's] employees to undermine [the plaintiff's] customer relationships and reputation in the marketplace" is a "distinct

allegation of culpable conduct that supports an independent unfair competition claim"); *Capital Health Sys. v. Veznedaroglu*, No. 15-8288, 2017 U.S. Dist. LEXIS 28390, at *26 (D.N.J. Feb. 27, 2017) (finding the plaintiff "has pled a separate cause of action for false designation of origin"); *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 388 (3d Cir. 2016) (allowing the plaintiff's unfair competition claim based on the defendant's alleged misappropriation of the plaintiff's proprietary information), or do not involve a parallel tortious interference claim, *Deborah Heart and Lung Ctr. v. Virtua Health, Inc.*, 2019 N.J. Super. Unpub. LEXIS 1633, at *24 (App. Div. 2019) (rejecting the plaintiff's tortious interference claims). As a result, these cases are inapplicable here.

Accordingly, Carr's unfair competition claim (Count II) is not viable. Heartland's Motion to Dismiss is granted as to Count II.

### D.    Carr Is Granted Leave to Amend

Carrs requests leave to amend should the Court grant Heartland's Motion to Dismiss. (ECF No. 179 at 39.) Heartland contends the Court should deny Carr's request for leave to amend because any amendment would be futile. (ECF No. 180 at 20.) The Court disagrees.

"In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962). "A general

presumption exists in favor of allowing a party to amend its pleadings." *Hunter v. Dematic USA*, No. 16-00872, 2016 U.S. Dist. LEXIS 65167, at *12 (D.N.J. May 18, 2016) (citing *Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 938 (3d Cir. 1984)). "[I]f a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002)). "Leave to amend is futile when it appears beyond doubt that the plaintiff can prove no set of facts in support of the complaint which would entitle him to relief." *In re MicroBilt Corp.*, No. 13-4752, 2013 U.S. Dist. LEXIS 176070, at *7 (D.N.J. Dec. 16, 2013) (citing *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996)).

The Court does not find Carr's amendment would necessarily be futile. For example, the Court cannot rule out the possibility that Carr may state an independent unfair competition claim, by adding relevant factual allegations in the intellectual property context. Moreover, Carr has never amended the Counterclaim before, which favors giving Carr an opportunity to cure the pleading deficiencies. *See S. Jersey Gas Co. v. Mueller Co., LTD*, No. 09-4194, 2011 U.S. Dist. LEXIS 133829, at *23 (D.N.J. Nov. 18, 2011) ("[S]ince this is the first time the merits of plaintiff's [New Jersey Consumer Fraud Act] claim have been addressed, the Court will grant plaintiff another opportunity to cure its pleading deficiencies."); *Marchese v. Cablevision Sys. Corp.*, No. 10-2190, 2011 U.S. Dist. LEXIS 80117, at *21 ("[B]ecause this claim was asserted, for the first time, in Plaintiffs' Amended Complaint, the Court will grant Plaintiffs leave to amend this claim."); *c.f. Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 n.7 (3d Cir. 2010) ("[G]ranting leave to amend would be futile as all versions of [the plaintiff's] complaint failed to state a claim on which relief could be granted."). Finally, the Court has not been alerted to any signs of undue delay, undue prejudice, or bad faith that disfavors granting a leave to amend.

In conclusion, Carr's request for leave to amend is granted. Carr must file an amended Counterclaim within 30 days.

**IV.     CONCLUSION**

For the reasons set forth above, Heardland's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6) is **GRANTED in part** and **DENIED in part**. Heardland's Motion to Dismiss is **DENIED** as to Count I, to the extent it is based on the alleged injuries inflicted upon Carr's reputation and personal brand. (ECF No. 160 at 80, ¶ 130.vii.) The Motion to Dismiss is otherwise **GRANTED**. Carr's request for leave to amend is **GRANTED** within 30 days of the date of this Opinion. An appropriate order will follow.

Date: **January 29, 2021**                                    _/s/ Brian R. Martinotti_____
                                                                        **HON. BRIAN R. MARTINOTTI**
                                                                        **UNITED STATES DISTRICT JUDGE**

23